IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                                                                                   :

In re                                                            :        Chapter 11

GBI SERVICES, LLC, *et al.*,        :        Case No. 25–12089 (CTG)

                Debtors.[1]           :        (Joint Administration Requested)

------------------------------------------------------------ x

**DECLARATION OF PHILIP CASSEL IN SUPPORT OF MOTION OF
DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE
CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS
WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III)
GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V)
SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

I, Philip Cassel, declare under penalty of perjury:

1. I am a Managing Director and Partner at Cassel Salpeter & Co., LLC ("**CS**"), an investment banking firm retained by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**").

2. I submit this declaration (this "**Declaration**") to assist the Court and parties in interest and in support of the relief requested in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the*

---

[1] The last four digits of GBI Services, LLC's tax identification number are 0771. A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/GBIServices. The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

RLF1 34236674v.5
RLF1 34236674v.5

*Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**DIP Motion**"),[2] filed contemporaneously herewith

3. Except as otherwise indicated, all facts set forth herein are based on my personal knowledge, my discussions with other members of my team, the Debtors' management and board members, the members of the Special Committee, other advisors to the Debtors, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## Background and Qualifications

4. Prior to joining CS, I was a financial advisor at Alvarez & Marsal and hold a bachelor's degree in mathematics from the Massachusetts Institute of Technology.

5. CS is an independent investment banking firm that provides advice to middle-market and emerging growth companies across a wide range of industries in the United States and worldwide. Collectively, CS's professionals have more than 100 years of experience providing private and public companies with a broad spectrum of investment banking services. CS's professionals have provided investment banking and other services in connection with the restructuring or sale of companies including, but not limited to: CHG US Holdings LLC, Enviroscent, Inc., Recombinetics, Inc., Intergalactic Therapeutics, Inc., Bird Global, Inc., Athenex, Inc. (Nasdaq: ATNX); Achagoen, Inc. (OTCPK:AKAO.Q); Avadel Pharmaceuticals plc (Nasdaq: AVDL); Sancilio Pharmaceuticals Company, Inc.; NephroGenex, Inc. (Nasdaq:NRX); Dynavox, Inc. (OTCPK:DVOX.Q); Lumastream, Inc.; 1 Global Capital LLC; Miami Air International, Inc.; Helios and Mataheson Analytics, Inc. (OTCPK:HMNY); Gulfstream International Airlines;

---

[2] Capitalized terms used but not defined herein have the meaning given to them in the DIP Motion.

Electrolytic Technologies Corporation; Brijot Millimetewave Technologies Corp.; HeathSTAR Communications, Inc.; HC Innovations, Inc.; Stant Corp.; AFP Imaging Corp.; Nailite International, Inc.; OMI Medical Imaging; Nitram, Inc.; and uniDigital, Inc. CS's professionals are also providing or have provided merger and acquisition advisory services in connection with whole or partial sale transactions involving companies across a wide range of industries.

### The Debtors' Need for Financing

6.      As discussed in greater detail in the DIP Motion, in the lead up to the commencement of these chapter 11 cases, FundNick, an entity affiliated with Mr. Milstein, provided the Debtors with a bridge facility (*i.e.*, the Prepetition Priority Bridge Loans), which was intended to give the Debtors sufficient liquidity runway and breathing room to explore potential strategic alternatives to the extent the Debtors could pursue a restructuring out of court.

7.      In parallel to closing on the Prepetition Priority Bridge Loans and with the additional liquidity such loans provided, the Special Committee engaged in contingency planning with respect to a potential chapter 11 filing to address the various issues facing the Company, and as a part of that, identified that any such filing would require DIP Financing. As a result, the Company, acting at the direction of the Special Committee, turned its attention to soliciting proposals for DIP Financing.

8.      Accordingly, in parallel, the Company solicited a proposal from FundNick, the Company's existing secured lender, and CS began marketing the DIP Financing opportunity to third parties. As discussed below, those efforts resulted in the Special Committee determining that the DIP Facility was not only the best financing available, but it was the only financing available, and the Special Committee, with the assistance of the Debtors' advisors, negotiated the terms of the DIP Financing with FundNick and its independent advisors.

### Alternative Sources of Financing Are Not Available Given the Circumstances

9. Leading up to the Petition Date, and at the direction and under the supervision of the Special Committee, CS solicited interest in DIP Financing from a large set of prospective third-party lenders. All such parties were offered the opportunity to refinance the Prepetition Priority Bridge Loans and provide post-petition financing on the same or better terms as the DIP Financing being offered by FundNick. In total, CS contacted 13 potential lenders, of which none were willing to move forward with an actionable proposal. During CS's discussions with potential financing partners, the following reasons were voiced as a basis for their inability to commit to providing the requested DIP Financing, including: (a) the extremely competitive interest rate and lack of any fees proposed by the incumbent prepetition lender, (b) a lack of opportunity to earn fees and interest due to the small size of the DIP Facility, (c) the lack of substantial hard assets that can serve as collateral given that the Company's most valuable assets are intangibles, such as intellectual property and customer relationships, and (d) the need to move quickly and devote significant resources to diligence the opportunity to beat out the prepetition lender that had prior knowledge of the assets, particularly given the limited economic opportunity. The Company, through counsel, also reached out to counsel to Mr. Nicklaus to solicit his interest in exploring the opportunity to provide DIP Financing — however, Mr. Nicklaus' counsel has not responded to such outreach as of the date hereof.

10. Given the Debtors' prepetition capital structure and the challenges facing their business, as well as the proposed terms of the DIP Facility, I believe the proposed DIP Facility represents the best and only postpetition financing option currently available to the Debtors. As noted herein, the DIP Facility's low interest rate and exclusion of fees typically included in DIP Financings are terms that are significantly better than market terms. After extensive discussion with the Company's advisors, the Special Committee affirmed that entry into the DIP Facility with

the DIP Lender represented the optimal path forward, particularly given the DIP Lender's willingness to provide the DIP Financing on favorable terms and the lack of any alternative.

11. In my experience, it is unlikely that any other party will be willing to offer DIP financing on the same or better terms. That said, CS, at the direction and under the supervision of the Special Committee, intends to continue marketing the DIP Financing after the first day hearing to third party financing sources to determine whether, ahead of the final hearing on the DIP Facility, any third parties will be willing to refinance out the interim DIP Financing on better terms than the DIP Facility.

### Terms of the DIP Facility Are Fair and Reasonable Under the Circumstances

12. Based on my experience as an investment banking and restructuring professional and my understanding of the Debtors' capital structure, business and need for postpetition financing, the terms of the DIP Facility are reasonable under the circumstances and are generally better than market terms for companies facing similar circumstances as the Debtors.

13. I also believe that the terms of the DIP Facility are fair and reasonable, and it is my understanding that the funding being provided under the DIP Facility is appropriately tailored to provide the Debtors with sufficient liquidity and runway to reasonably achieve their chapter 11 objectives under the circumstances. Moreover, I believe, including based on the terms of the DIP Facility, that the DIP Facility was the result of extensive good faith, arm's length negotiations between the Debtors, acting at the direction of the Special Committee, on the one hand, and the DIP Lender, on the other hand, with each party represented by separate independent counsel.

### Conclusion

14. As described herein, I believe that the proposed DIP Facility represents the best postpetition financing option available to the Debtors to provide for the Debtors' immediate

liquidity needs under the circumstances of these chapter 11 cases and that the terms and conditions of the proposed DIP Facility are fair and reasonable.  I believe that the terms of the proposed adequate protection package, taken as a whole, are also reasonable under the circumstances.  Finally, I believe that the terms of the DIP Facility were negotiated in good faith and at arm's length by the Debtors, acting at the direction of the Special Committee, with the favorable terms of such facility being the best evidence of the fairness of the process. Accordingly, approval of the DIP Facility is in the best interests of the Debtors' estates and represents a sound exercise of the Debtors' reasoned business judgment.

Dated: November 23, 2025

*/s/ Philip Cassel*
Philip Cassel
Partner and Managing Director
Cassel Salpeter & Co.
