# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re

GBI SERVICES, LLC, *et al.*,

Debtors. [1]

---------------------------------------------------------- x

: Chapter 11
:
: Case No. 25-12089 (CTG)
: (Jointly Administered)
:
: Obj. Deadline: January 2, 2026 at 4:00 p.m. (ET)
: Hearing Date: January 8, 2026 at 1:00 p.m. (ET)

**MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B) AUTHORIZING DESIGNATION OF STALKING HORSE BIDDER, (C) AUTHORIZING CONDUCT OF THE AUCTION AND SALE HEARING, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, AND (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND FORM AND MANNER OF NOTICE OF ASSUMPTION AND ASSIGNMENT; (II)(A) AUTHORIZING SALE OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

GBI Services, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases, respectfully represent as follows in support of this motion (the "**Motion**"):

## Preliminary Statement

1.     The Debtors commenced these chapter 11 cases to pursue a value maximizing sale or reorganization for the benefit of all stakeholders and the Company's more than

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669).  The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

30 employees and contractors, who have continued their tireless efforts to grow the Company's business lines, further the projects currently underway, and promote the Nicklaus brand and legacy in the face of long-term litigation.

2.      Following the Petition Date (as defined below), the Debtors, with the assistance of their advisors, commenced a postpetition marketing process to solicit bids for the potential sale of substantially all of the Debtors' assets.[2]   The Debtors have managed their restructuring with the oversight of a special committee (the "**Special Committee**") composed solely of two (2) highly experienced and well-respected independent managers (the "**Independent Managers**").   The Independent Managers have been delegated  with, among other things, sole authority to direct and oversee the Debtors' restructuring process and these chapter 11 cases, including all aspects of the postpetition marketing process and any potential sale.   In an exercise of its reasonable business judgment, the Special Committee has determined that pursuing a sale of the Company in accordance with the Bidding Procedures provides the best opportunity to maximize value for the Debtors, their estate, and their creditors.

3.      The Debtors have developed bidding and auction procedures to govern the marketing and sale of the Company (the "**Bidding Procedures**"), which are attached as <u>Exhibit 1</u> to the Bidding Procedures Order (as defined below).   The Bidding Procedures allow for, among other things, (i) interested parties to submit bids for the Company and (ii) the Debtors' (a) designation of one or more Stalking Horse Bidders (as defined below), (b) offer of bid protections (collectively, the "**Stalking Horse Bid Protections**") to a Stalking Horse Bidder(s), and (c) entry

---

[2]      For the avoidance of doubt, the Debtors reserve all rights regarding the form of a Sale Transaction and may pursue (i) a Sale Transaction (as defined below) pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**") or (ii) a Sale Transaction or other restructuring transaction pursuant to a chapter 11 plan.

into an asset purchase agreement (each, a "**Stalking Horse Agreement**") with a Stalking Horse Bidder(s), subject to the terms and provisions of the Bidding Procedures and the Bidding Procedures Order, including further notice and Court approval.

4.     The Bidding Procedures were designed to generate the greatest level of interest in, and highest or best value for, the Company while affording the Debtors maximum flexibility to execute a sale transaction as quickly and efficiently as possible.  The Debtors are confident that the Bidding Procedures and the other relief requested herein will maximize recoveries for all stakeholders.  By this Motion, the Debtors request authorization to continue the Marketing and Sale Process (as defined below) and take all related steps described herein.

### Background

5.     On November 21, 2025 (the "**Petition Date**"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

6.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

7.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Philip D. Cotton in Support of First Day Relief* [Docket No. 13] (the "**First Day Declaration**").

3

## Jurisdiction and Venue

8.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

10.      By this Motion, pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1, and 9006-1, the Debtors request entry of the following:

(a)      an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**")

   (i)      approving the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1, in connection with a sale of the Company (a "**Sale Transaction**");

   (ii)      authorizing the Debtors to designate one or more Stalking Horse Bidders, offer such Stalking Horse Bidders Stalking Horse Bid Protections, and enter into Stalking Horse Agreements with such Stalking Horse Bidders, in each case subject to further Court approval;

   (iii)      conducting an auction for the Company (the "**Auction**"), if necessary;

   (iv)      scheduling a hearing (the "**Sale Hearing**") for approval of a Sale Transaction;

(v)     approving the form and manner of the (1) notice of a sale of the Company, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "**Sale Notice**") and (2) notice to each relevant non-Debtor counterparty (each, a "**Counterparty**") to an Assigned Contract (as defined below) regarding the Debtors' potential assumption and assignment of an executory contract or unexpired lease of the Debtors (collectively, "**Contracts and Leases**") setting forth the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "**Assignment and Cure Notice**");

(vi)    approving procedures for the assumption and assignment of Contracts and Leases and determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and

(vii)   granting related relief; and

(b)     an order (the "**Sale Order**") authorizing and approving the following:

(i)     a sale of substantially all of the Debtors' assets free and clear of all liens, claims, interests, and encumbrances (other than certain assumed liabilities, liens or as otherwise provided in the applicable purchase agreement), with liens to attach to the proceeds of any Sale Transaction;[3]

(ii)    the assumption and assignment of Assigned Contracts in connection with any Sale Transaction; and

(iii)   granting related relief.

**Marketing and Sale Process**

11.     On November 15, 2025, the Company engaged Cassel Salpeter & Co., LLC ("**Cassel Salpeter**") to serve as its investment banker and to assist in, among other things, a sale, refinancing, or restructuring of the Debtors.  Since its engagement, Cassel Salpeter has worked with the Debtors and their advisors to prepare for a postpetition marketing and sale process of the

---

[3]     If a sale of the Company is pursued through a chapter 11 plan, additional notice will be provided.

Company (the "**Marketing and Sale Process**").  Such efforts include, but are not limited to, the finalization of an initial buyer list, population of a virtual data room, and the preparation of a teaser, process letter, and confidential information memorandum.  On or around December 8, 2025, Cassel Salpeter commenced the Marketing and Sale Process through initial outreach to over 120 potential strategic and financial buyers to garner interest in pursuing a transaction for the Company (the "**Potential Interested Parties**").

### Need for a Timely Marketing and Sale Process

12.    As part of the Debtors' chapter 11 strategy, the Debtors are conducting the Marketing and Sale Process to maximize value for the benefit of all stakeholders.  Consistent with that goal, the DIP Credit Agreement (as defined below), sets forth a milestone for obtaining approval of the Bidding Procedures (the "**Milestone**").  Moreover, the dates proposed herein are reasonable and will provide all potential bidders with sufficient time and information to submit a bid for the Company.  In formulating the procedures and time periods set forth therein, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to timely and efficiently run a competitive Marketing and Sale Process.  The Bidding Procedures are designed to encourage all prospective bidders to submit bids in accordance with an adequate timeline that aims to derive the highest or best value for the benefit of all of the Debtors' stakeholders.

13.    In light of the foregoing, the Debtors believe that the proposed timeline provided for in the Bidding Procedures is both reasonable and necessary under the circumstances of these chapter 11 cases.

### Designation of a Stalking Horse Bidder

14.    Based on the advice and counsel of the Debtors' advisors, the Debtors have determined, in their reasonable business judgment, that having the flexibility to designate one or

more Stalking Horse Bidders for the Company will enhance the Debtors' ability to maximize value in the best interests of their estates and creditors.

15.     Accordingly, as set forth in further detail in the Bidding Procedures, the Debtors request authority to, at any time prior to the Auction, designate one or more stalking horse bidders for the Company (each, a "**Stalking Horse Bidder**," and each bidder's bid, a "**Stalking Horse Bid**"), to enter into purchase agreement(s) with such Stalking Horse Bidders (each, a "**Stalking Horse Agreement**"), and to offer such Stalking Horse Bidder Stalking Horse Bid Protections.  Specifically, such Stalking Horse Bid Protections may include, among other things, (i) a break-up fee and expense reimbursement upon the terms and in an amount agreed to by the Debtors (collectively, the "**Termination Payment**"), and (ii) other appropriate and customary protections to a Stalking Horse Bidder.  In the event the Debtors designate one or more Stalking Horse Bidder(s), the Debtors shall seek Court approval of such Stalking Horse Bidder(s), the applicable Stalking Horse Agreement(s), and any Stalking Horse Bid Protections, and may do so on an expedited basis pursuant to Section 105(a) of the Bankruptcy Code and Local Bankruptcy Rule 9006-1(e).  In accordance with the noticing procedures outlined below (the "**Noticing Procedures**"), upon the designation of one or more Stalking Horse Bidders, the Debtors shall file with the Court, serve on the Objection Notice Parties, and cause to be published on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/GBIServices (the "**Epiq Website**"): (i) a notice setting forth the (a) identity of the Stalking Horse Bidder(s), (b) material terms of the Stalking Horse Agreement(s), including the terms of any proposed Stalking Horse Bid Protections, and (c) procedures and deadlines governing objections to any proposed Stalking Horse Agreement(s), including the objection deadline by which any interested parties may object to the designation of the Stalking Horse Bidder (each, a "**Notice of Stalking Horse Bidder**"); (ii) a copy

of any Stalking Horse Agreement(s); (iii) a declaration in support of the approval of the Stalking Horse Agreement and Stalking Horse Bid Protections (the "**Stalking Horse Declaration**"); and (iv) a proposed order authorizing and approving the Stalking Horse Bid Protections (the "**Proposed Stalking Horse Order**").

16.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Objection Notice Parties no later than three (3) business days after the service of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").  If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid in accordance with the Bidding Procedures Order and the Bidding Procedures.

17.     If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bidder, upon the expiration of the Stalking Horse Objection Deadline, the Debtors may submit the Proposed Stalking Horse Order under certification of counsel, which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Stalking Horse Bid Protections set forth in the Stalking Horse Declaration and Notice of Stalking Horse Bidder.

18.     Given the Debtors' desire to maximize value for stakeholders, the ability to designate one or more Stalking Horse Bidders and offer such bidder(s) Stalking Horse Bid Protections is justified and appropriate.

## Bidding Procedures

### A.   Overview

19.   The Bidding Procedures are designed to promote a competitive and timely sale process.  The Bidding Procedures describe, among other things, procedures for parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of the Auction (if any), the selection and approval of the ultimately Successful Bidder(s) and Back-Up Bidder(s), and various applicable deadlines with respect to the foregoing.  If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or best offer(s) for the Company. Although the Bidding Procedures set forth a proposed timetable, the Debtors will have the ability to deviate from such timetable by exercising their reasonable business judgment in good faith.

20.   The Bidding Procedures are attached as <u>Exhibit 1</u> to the Bidding Procedures Order, and consequently, are not restated in their entirety herein.  Pursuant to Local Bankruptcy Rule 6004-1(c), certain of the key terms of the Bidding Procedures are highlighted in the chart below.[4]

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
| --- | --- |
| **Provisions Governing Qualification of Bidders and Qualified Bids**<br>Local Bankruptcy Rule 6004-1(c)(i)(A)–(B) | **A.   Indication of Interest Date** – The deadline to submit a Non-Binding Indication of Interest is **January 20, 2026 at 4:00 p.m. (prevailing Eastern Time)**.  *See* Bidding Procedures Pg. 2.<br><br>**B.   Bid Deadline –** The deadline to submit a binding and irrevocable offer to acquire the Company is **February 2, 2026 at 4:00 p.m. (prevailing Eastern Time).**  *See* Bidding Procedures Order ¶ 4; Bidding Procedures Pg. 2.<br><br>**C.   Potential Bidder Requirements** – To access the data room of the Debtors' material documents, a potential bidder (a "**Potential Bidder**") must submit:<br><br>   1.   <u>Confidentiality Agreement</u>.  An executed confidentiality agreement in form and substance that is reasonably satisfactory to the Debtors; and |

---

[4]   To the extent that there is any inconsistency between the terms of the Bidding Procedures and the summary set forth herein, the terms of the Bidding Procedures shall control.

2. Financial Wherewithal. Upon request by the Debtors, sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, that the interested party, (i) has the financial wherewithal to consummate the Sale Transaction, and (ii) intends to access the Data Room for a bona fide purpose consistent with the Bidding Procedures.

Notwithstanding the foregoing, the DIP Lender shall have access to the data room subject to the confidentiality provisions of the DIP Credit Agreement (as defined below).

**D. Qualified Bid Requirements** – To constitute a Qualified Bid, a Bid must include, at a minimum, the following:

1. Identity of Bidder. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction), and the complete terms of any such participation.

2. Assets Purchased. Each Bid must, in the Proposed Agreement, clearly state the assets contemplated by or excluded from the proposal.

3. Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**") in U.S. dollars.

4. Assumed Liabilities. Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the bidder seeks to assume.

5. Form of Consideration. Each Bid must indicate whether it is an all-cash offer (including confirmation that the cash component of the Bid is based in U.S. Dollars) or consists of a non-cash component in the form of a credit bid.

6. All-Cash Offer. Each Bid that is an all-cash offer must identify that the Purchase Price is to be paid in cash in full, unless otherwise agreed by the Debtors; *provided, that*, if the assets proposed to be acquired by a Bid are subject to a Stalking Horse Bid, each Qualified Bid must provide cash consideration sufficient to satisfy the payment of any Termination Payment in cash in full

7. Credit Bid. Persons or entities holding a perfected security interest in the Debtors' assets may, pursuant to section 363(k) of the Bankruptcy Code, seek to submit a credit bid on such assets, to the extent permitted by applicable law, any Bankruptcy Court orders, and the documentation governing the Debtors' prepetition or postpetition secured credit facilities.

   a. Direction Letter. To the extent applicable, a credit bid must include a copy of the direction by the applicable lenders to the applicable agent to authorize the submission of such credit bid.

   b. Cash Requirements. If a credit bid is submitted for any portion of the assets, such Bid shall include an amount sufficient to pay the Termination Payment in cash.

   c. Right to Credit Bid. In accordance with the terms of the DIP Credit Agreement approved by the Court in the Interim DIP Order, [5] (i) subject to Section 363(k) of the

---

[5] The "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superiority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* entered by the Court on November 26, 2025 [Docket No. 55]. The "**DIP Credit Agreement**" and "**DIP Lender**" have the meanings ascribed to them in the Interim DIP Order.

Bankruptcy Code until the entry of the Final Order,[6] the DIP Lender shall have the immediate right to credit bid in accordance with the DIP Loan Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof); (ii) subject to any Challenge, section 363(k) of the Bankruptcy Code, and to the entry of the Final Order granting such relief, the Prepetition Priority Bridge Loan Lender shall have the right to credit bid in accordance with Prepetition Priority Bridge Loan Credit Documents, up to the full amount of the Prepetition Priority Bridge Loan Obligations (including any Adequate Protection Obligations), in any sale of the Prepetition Collateral (or any portion thereof); and (iii) subject to any Challenge, section 363(k) of the Bankruptcy Code, and to the entry of the Final Order granting such relief, the Prepetition Junior Term Loan Lender shall have the right to credit bid in accordance with Prepetition Junior Term Loan Documents, up to the full amount of the Prepetition Junior Term Loan Obligations (including any Adequate Protection Obligations), in any sale of the Prepetition Collateral (or any portion thereof), in each case (a) without the need for further Court order authorizing the same, and (b) whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. The DIP Lender shall be deemed a Qualified Bidder for each of the assets for which it timely submits a credit bid on account of the DIP Obligations. For the avoidance of doubt, nothing in the Bidding Procedures Order or the Bidding Procedures abrogates any right to commence a Challenge.

8.  **Joint Bids.** The Debtors may approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

9.  **Deposit.** A Bid must be accompanied by a good faith deposit (the "**Good Faith Deposit**") in the form of cash in an amount equal to ten percent (10%) of the proposed Purchase Price.

    a.  A deposit is not required for any credit bid portion of such Qualified Bid to the extent such credit bid is valid, *provided*, *however*, that in the event the DIP Lender submits a valid credit bid that includes a cash component, the DIP Obligations may be used as a credit towards such Good Faith Deposit requirement, and the amount of the DIP Obligations used as credit towards the Good Faith Deposit shall be subject to forfeiture as further set out below and, if forfeited, the DIP Obligations shall be reduced by the amount forfeited and shall not need to be repaid by the Debtors.

    b.  To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price.

    c.  The Successful Bidder's Good Faith Deposit shall be applied against the Purchase Price of such bidder's Successful Bid upon the consummation of the Sale Transaction.

    d.  A Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if: (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted under the Bidding Procedures or the Bidding Procedures Order, or with the Debtors' prior written consent during the time the Qualified Bid remains binding and irrevocable; or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and fails to enter into the required definitive documentation or to consummate the Sale Transaction in accordance with the Bidding Procedures.

10. **Proposed Agreement.** Each Bid must include an executed agreement (the "**Proposed Agreement**") for the acquisition of the Company marked with a redline to show the specific changes to the Proposed Agreement to the applicable form agreement distributed to Potential Bidders. If there is a Stalking Horse Bid, then the Proposed Agreement related to such Bid

---

[6]   Capitalized terms in this sub-section have the meanings ascribed to them in the Interim DIP Order.

must be redlined against the relevant Stalking Horse Agreement. The Proposed Agreement shall:

    a.   Include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the Stalking Horse Agreement or form agreement distributed by the Debtors to Potential Bidders, as applicable; and

    b.   Not condition the closing of the proposed Sale Transaction on the receipt of any third party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

11.   <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is contemplated by the applicable Sale Transaction.

12.   <u>Financial Information</u>. Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transaction, including financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to any unreasonable conditions in the Debtors' discretion), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transaction in a timely manner.

13.   <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

    a.   A statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the Company prior to submitting its Bid;

    b.   A statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Company in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Company or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

    c.   A statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the Company;

    d.   A statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) entered into an agreement or negotiated towards terms of an agreement that would restrict a party's ability to submit a bid or engage in discussions with other parties surrounding the submission of a bid,[7] or

---

[7] For the avoidance of doubt, prior to any Potential Bidder in its capacity as such engaging in any communication with another Potential Bidder in its capacity as such regarding a potential Bid, the Potential Bidder initiating such communication must obtain consent from the Debtors.

(iii) taken any other action to, or that could, prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted in the Debtors' discretion as set forth in the Bidding Procedures;

e. A statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

f. A statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

14. Required Approvals. Each Bid must include a statement or evidence: (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal approval, or (c) the outcome or review of outstanding or unperformed due diligence; (ii) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

15. Authorization. Each Bid must include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and the Bidding Procedures.

16. Other Requirements.

a. Unconditional Offer / Contingencies. Each Bid must contain a statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of the Sale Transaction.

b. No Entitlement to Break-Up Fee, Expense Reimbursement or Other Amounts. With the exception of any Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

c. Disclosure of Connections. Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer, director, or equity owner of the Debtors.

d. Contact Information. A Potential Bidder must provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder.

e. Covenant to Cooperate. A Potential Bidder must covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's

|  | operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements. |
|---|---|
|  | f. <u>TSA Requirement</u>. Each Bid must identify whether transition services will be needed, the type of such services, and the duration such services are needed. |
|  | *See* Bidding Procedures Pgs. 6-11. |
|  | E. The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. *See* Bidding Procedures Pg. 12. |
|  | F. The Debtors may waive terms and conditions with respect to any Potential Bidder. *See* Bidding Procedures Pg. 6. |
|  | G. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein, including at the Auction. *See* Bidding Procedures Pg. 11. |
| **Provisions Providing Bid Protections to "Stalking Horse" or Initial Bidder** Local Bankruptcy Rule 6004-1(c)(i)(C) | A. Subject to Court approval, which the Debtors may seek on an expedited basis, the Debtors may agree to provide any Stalking Horse Bidder(s) with proposed Stalking Horse Bid Protections including, among other things: (i) offering the Termination Payment upon the terms and in an amount agreed to by the Debtors; and (ii) other appropriate and customary protections. *See* Bidding Procedures Pgs. 3-4. |
|  | B. If a Stalking Horse Bidder bids at the Auction, such Stalking Horse Bidder will also be entitled to include in its Bid the cash and other consideration proposed by the Stalking Horse Bidder plus the Termination Payment. *See* Bidding Procedures Pg. 13-14. |
| **Modification of Bidding and Auction Procedures** Local Bankruptcy Rule 6004-1(c)(i)(D) | A. Nothing in the Bidding Procedures shall require the Debtors to take any action, or to refrain from taking any action to the extent the Debtors determine that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or their fiduciary obligations under applicable law (the "**Fiduciary Out**"). In the event the Debtors exercise their Fiduciary Out, the Debtors shall provide notice to the DIP Lender as soon as reasonably practicable thereafter. |
|  | B. Subject to the Consultation Rights set out in the Bidding Procedures, the Debtors shall have the right, as they may reasonably determine to be in the best interests of their estates, to carry out the Bidding Procedures, including, without limitation, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which bids are the Successful Bid(s) and Back-Up Bid(s); (iv) reject any bid that is (a) inadequate or insufficient, (b) not a Qualified Bid or otherwise not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; and (v) adjourn or cancel the Auction and/or the Sale Hearing in open court without further notice or as provided in the Bidding Procedures; (vi) withdraw the Motion at any time with or without prejudice and (vii) modify the Bidding Procedures in a manner consistent with their fiduciary duties and applicable law, including: (a) waiving terms and conditions with respect to any Potential Bidder; (b) extending deadlines set forth in the Bidding Procedures; (c) announcing at the Auction modified or additional procedures for conducting the Auction; and (d) providing reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Company, to the extent not materially inconsistent with the Bidding Procedures Order. |
|  | *See* Bidding Procedures Pg. 17-18. |

| | |
|---|---|
| **Closing with Alternative Backup Bidders** <br> Local Bankruptcy Rule 6004-1(c)(i)(E) | A. The Debtors may, in the exercise of their business judgment, identify the highest or otherwise best Qualified Bid as the Successful Bid and the bidder submitting such bid, the Successful Bidder. The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (the "**Back-Up Bid**" and the bidder submitting such bid, the "**Back-Up Bidder**"). <br><br> B. A Back-Up Bid shall remain open and irrevocable until the earliest to occur of: (i) consummation of the Sale Transaction with the Successful Bidder; (ii) 180 calendar days following the date on which the Debtors identified the Back-Up Bidder's Bid as the Back-Up Bid; and (iii) the release of such Back-Up Bid by the Debtors in writing (such date, the "**Back-Up Bid Expiration Date**"). <br><br> C. If a Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bidder. <br><br> *See* Bidding Procedures Pg. 14. |
| **Provisions Governing the Auction** <br> Local Bankruptcy Rule 6004-1(c)(ii) | If the Debtors determine that no Qualified Bid (other than a Stalking Horse Bid) was received by the Qualified Bid Deadline or only one (1) Qualified Bid was received by the Qualified Bid Deadline, the Debtors may choose not to conduct the Auction, and may file a notice with the Court indicating that no Auction will be held. The Debtors shall also publish such notice on the Epiq Website. To the extent the only Qualified Bid received is from the Stalking Horse Bidder(s) or only one (1) Qualified Bid is received, as applicable, such bidder(s) may be named the Successful Bidder. *See* Bidding Procedures Pg. 12. <br><br> If the Debtors receive two (2) or more Qualified Bids with respect to the Company, the Debtors shall conduct the Auction on **February 4, 2026 at 10:00 a.m. (prevailing Eastern Time)** at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors and upon notice to all parties in interest. *See* Bidding Procedures Pg. 13. <br><br> **Participants and Attendees at Auction**: <br><br> A. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith. *See* Bidding Procedures Pg. 13. <br><br> B. Professionals and/or other representatives of the Qualified Bidders, the Debtors, and the DIP Lender shall be permitted to attend and observe the Auction, *provided, that,* upon the DIP Lender's submission of a Qualified Bid, the DIP Lender and its professionals or advisors shall be permitted to attend the Auction in their capacity as a Qualified Bidder. *See* Bidding Procedures Pg. 13. <br><br> C. A creditor of the Debtors may attend and observe the Auction; *provided, that*, such creditor provides the Debtors with written notice of its intention to attend the Auction on or before one (1) business day prior to the Auction, which written notice shall be sent to the Debtor Notice Parties via electronic mail. *See* Bidding Procedures Pg. 13. <br><br> D. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that: (i) it has not engaged in any of the foregoing prohibited actions; and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder or Back-Up Bidder. *See* Bidding Procedures Order ¶ 11. <br><br> **Auction Procedures**: <br><br> A. <u>Open Auction</u>. The Auction will be conducted openly and shall be transcribed or recorded. |

|  | B. <u>Starting Bid and Minimum Overbid Amount</u>.  At the Auction, Qualified Bidders (including a Stalking Horse Bidder, if applicable) will be permitted to increase their bids.  At the outset of the Auction, the Debtors will determine and announce the highest or otherwise best bid for the Company, which bid will serve as the starting bid (the "**Starting Bid**").  Bidding will start at the Purchase Price and terms proposed in the Starting Bid, and will proceed thereafter in increments to be announced at the Auction by the Debtors (a "**Minimum Overbid Amount**").  Subject to the Stalking Horse Protections (if any), the Minimum Overbid Amount with respect to a Stalking Horse Bid (if any), whether in one or a combination of Qualified Bids, shall be the amount of the Termination Payment, if applicable, plus an amount announced by the Debtors.<br><br>C. <u>Disclosure of Bids</u>. All material terms of a bid submitted in response to any successive bids made at the Auction (each, an "**Overbid**") will be disclosed to all other Qualified Bidders participating in the Auction.<br><br>*See* Bidding Procedures Pgs. 13-14.<br><br>Absent advance consent of the Debtors, pursuant to 18 U.S.C. §§ 156 and 157, Potential Bidders and their representatives may not in their capacity as such communicate with one another, collude, or otherwise coordinate (including regarding a joint bid), regarding any potential or submitted bid or for purposes of participating in the Auction.  All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) entering into an agreement or negotiating towards terms of an agreement that would restrict a party's ability to submit a bid or engage in discussions with other parties surrounding the submission of a bid,[8] or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted with advance consent of the Debtors.  The Debtors reserve the right, in their reasonable business judgment, to disqualify any Potential Bidders that fail to comply with any of the foregoing.  *See* Bidding Procedures Pg. 14. |
| **Relief from Bankruptcy Rule 6004(h)**<br><br>Local Bankruptcy Rule 6004-1(b)(iv)(O) | This Motion seeks, and the proposed Bidding Procedures Order approves, relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h).  *See* Bidding Procedures Order ¶ 39. |

### B.    Key Dates and Deadlines

21.    The Debtors propose the key dates and deadlines for the Marketing and Sale Process listed below (the "**Sale Timeline**").

| **Key Event** | **Deadline** |
|---|---|
| Deadline to File and Serve Initial Assumption and Assignment Notice | January 20, 2026 (or three (3) business days after entry of the Bidding Procedures Order) |

---

[8]    *See* Footnote 7.

| Deadline to submit Non-Binding Indications of Interest | January 20, 2026 at 4:00 p.m. (prevailing Eastern Time) |
|---|---|
| Deadline to file (i) Consent Right Objections and (ii) Cure Cost Objections | January 30, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to submit Bids (the "**Bid Deadline**") | February 2, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to notify Bidders of status as Qualified Bidders | 1 (one) business day prior to Auction |
| Auction, if necessary, to be conducted at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders (if other Qualified Bids received for the Company) | February 4, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Deadline to file Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) (if an Auction is held) | Within one (1) business day after the conclusion of the Auction |
| Deadline to file Objections to (i) Sale Transaction and (ii) Adequate Assurance of Future Performance | February 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to Reply to Objections to (i) Sale Transaction, (ii) Cure Costs, and (iii) Adequate Assurance of Future Performance | February 12, 2026 at 12:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | February 13, 2026 (subject to Court availability) |

22.     The time periods set forth in the Bidding Procedures are reasonable. Under the proposed timeline, there will be 56 calendar days between the date Cassel Salpeter initiated outreach to bidders and the Bid Deadline. This period will provide parties with sufficient time to formulate bids to purchase the Company. Further, the Debtors have commenced initial outreach to prospective bidders and extensive information regarding the Debtors' business will be made available in a virtual data room during the initial outreach process upon the execution of confidentiality agreements. Accordingly, parties that may have an interest in bidding likely would

have already conducted diligence and evaluated the Debtors' business so that they will not be bidding in a vacuum.  In addition, subject to the execution of appropriate confidentiality agreements, potential bidders who have not previously conducted diligence on the Debtors' business will have immediate access to a substantial body of information regarding the Company, including information gathered based upon specific due diligence requests of other bidders.

### C.    Noticing Procedures

23.    The Bidding Procedures and/or Bidding Procedures Order provide for the following Noticing Procedures:

(a)    <u>Sale Notice</u>.  The Debtors will file with the Court, serve on the Sale Notice Parties, all Counterparties and all parties identified on the Debtors' creditor matrix, and cause to be published on the Epiq Website the Sale Notice, which will set forth: (i) a general description of the Company for sale; (ii) the date, time, and/or place of (a) the Auction and (b) the Sale Hearing; (iii) the Sale Objection Deadline; and (iv) the procedures for filing objections to a Sale Transaction (each, a "**Sale Objection**").

(b)    <u>Objection Notice Parties</u>.  The "**Objection Notice Parties**" shall include the following parties:

(i)    the Debtor Notice Parties;[9]

(ii)    the United States Trustee for the District of Delaware; and

(iii)    any other party entitled to notice pursuant to Bankruptcy Rule 2002.

(c)    <u>Designation of a Stalking Horse Bidder</u>.  In the event the Debtors designate one or more Stalking Horse Bidder(s), the Debtors shall seek Court approval of such Stalking Horse Bidder(s), the applicable Stalking Horse Agreement(s), and any Stalking Horse Bid Protections, and may do so on an expedited basis pursuant to Section

---

[9]    The "**Debtor Notice Parties**" include the following, and each other representative advised by the Debtors in writing from time to time: (i) Weil, Gotshal & Manges LLP (Attn.: Ronit J. Berkovich (Ronit.Berkovich@weil.com); David J. Cohen (DavidJ.Cohen@weil.com); and Daphne Papadatos (Daphne.Papadatos@weil.com)); (ii) Richards, Layton & Finger, PA (Attn.: Zachary Shapiro (Shapiro@rlf.com) and Clint M. Carlisle (Carlisle@rlf.com)); and (iii) Cassel Salpeter & Co., LLC (Attn.: James Cassel (jcassel@cs-ib.com) and Philip Cassel (pcassel@cs-ib.com)).

105(a) of the Bankruptcy Code and Local Bankruptcy Rule 9006-1(e). Upon designation of one or more Stalking Horse Bidder(s), the Debtors shall file with the Court, serve on the Objection Notice Parties, and cause to be published on the Epiq Website: (i) the Notice of Stalking Horse Bidder, setting forth the (a) identity of the Stalking Horse Bidder(s), (b) material terms of the Stalking Horse Agreement(s), including the terms of any proposed Stalking Horse Bid Protections, and (c) procedures and deadlines governing objections to any proposed Stalking Horse Agreement(s) including the objection deadline by which any interested parties may object to the designation of the Stalking Horse Bidder; (ii) a copy of any Stalking Horse Agreement(s); (iii) a declaration in support of the Stalking Horse Agreement and the Stalking Horse Bid Protections; and (iv) a proposed order authorizing and approving the Stalking Horse Bid Protections.

(d)    <u>Selection of Qualified Bids</u>.    The Debtors, in their reasonable business judgment, will make a determination regarding which of the Bids received by the Bid Deadline qualifies as a Qualified Bid no later than one (1) business day prior to the Auction (the "**Qualified Bid Deadline**"), and will notify Prospective Bidders whether they have been selected as Qualified Bidders by the Qualified Bid Deadline.

(e)    <u>Notice of Hearing if Auction Not Held</u>.

(i)    <u>Stalking Horse Bid</u>.    If no Qualified Bid (other than a Stalking Horse Bid) is received by the Qualified Bid Deadline, the Debtors may choose not to conduct the Auction and may file with the Court, serve on the Objection Notice Parties, and cause to be published on the Epiq Website a notice (1) indicating that the Auction for the Company has been cancelled, (2) indicating that the Stalking Horse Bidder is the Successful Bidder for the Company, and (3) setting forth the date and time of the Sale Hearing.

(f)    <u>Notice of Auction Results</u>.    The Debtors will, within one (1) business day after the conclusion of the Auction, file with the Court, serve on the Objection Notice Parties (and each Counterparty to an Assigned Contract in a Successful Bid, if known), and cause to be published on the Epiq Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall: (i) identify the Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder; (ii) list all Assigned Contracts in the Successful Bids and Back-Up Bids, if known; (iii) identify any known proposed assignee(s) of Assigned Contracts (if different from the applicable Successful Bidder or Back-up Bidder); and (iv) set forth the deadline

and procedures for filing objections based on the inadequacy of the Adequate Assurance Information and other Sale Objections in response to the Notice of Auction Results.

(g)    Objection Deadline for the Sale Transaction.    The Bidding Procedures Order establishes: (i) **February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)** as the deadline to file with the Court and serve on the Objection Notice Parties and the Counterparties objections to a Sale Transaction and Adequate Assurance of Future Performance, (the "**Sale Objection Deadline**") and (ii) **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)** as the deadline to file and serve Cure Objections related to the proposed Cure Cost of an Assigned Contract**.**

24.    The Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the Marketing and Sale Process, including, among other things, the Sale Objection Deadline, the Bid Deadline, and the time and location of the Auction and the Sale Hearing.  Accordingly, the Debtors requests that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances, and comply with the requirements of Bankruptcy Rule 2002.

**Consent Right Objection Procedures**

25.    The Debtors may seek to assign to the Successful Bidder(s), pursuant to the applicable asset purchase agreement, certain contracts, agreements, leases and other assets, free and clear of all liens, claims, interests, and encumbrances (other than certain assumed liabilities, liens or as otherwise provided in the applicable purchase agreement).

26.    If any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "**Consent Right**"), then such party must file with the Court, an objection in accordance with the procedures set out in the Bidding Procedures Order (each, a "**Consent Right Objection**"), no later than **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)**.  If a party files a Consent Right Objection in a manner that is consistent with the

20

requirements set forth above and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by the Court at the Sale Hearing or such later hearing as may be determined by the Debtors on notice to the objecting party.

### Assumption and Assignment Procedures

27.     In connection with a Sale Transaction, the Debtors may seek to assume and assign any known executory Contracts and Leases (all such Contracts and Leases, collectively, the "**Assigned Contracts**") that are designated by the Successful Bidder(s).  The Assumption and Assignment Procedures set forth in the Bidding Procedures Order are designed to, among other things, govern the Debtors' provision of Adequate Assurance Information and provide notice of Cure Costs to relevant Counterparties.

28.     The Debtors will file with the Court and serve the Assignment and Cure Notice on all Counterparties regarding the proposed assumption and assignment of Assigned Contracts on **January 20, 2026** (or three (3) business days after entry of the Bidding Procedures Order).  The Assignment and Cure Notice will identify the Debtors' calculation of any Cure Costs payable if the Debtors ultimately assume and assign such Contract and Lease.  As set forth above, each Counterparty will have ample time to object to the Debtors' calculation of such Cure Costs, with objections due **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)**.[10]

29.     Further, as set forth in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid proof of its financial ability to perform in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code with respect

---

[10]     As set forth in the Bidding Procedures Order, in the event that the Debtors identify Additional Assigned Contracts (as defined therein), the Debtors will fill a Supplemental Assignment and Cure Notice (as defined therein), and any Counterparty identified on such notice will have a right to object thereto in accordance with the Bidding Procedures Order.

to any Contracts to be assumed and assigned ("**Adequate Assurance Information**").  To the extent requested in writing by a Counterparty, the Debtors will provide Adequate Assurance Information to all Counterparties to the Assigned Contracts and such Counterparties will have an opportunity to file an objection on or before **February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

### Relief Requested Is Warranted
### and in the Best Interests of the Debtors and their Stakeholders

#### A.    The Bidding Procedures Are Fair and Reasonable

30.    The Bidding Procedures are designed to promote the paramount goal of any proposed sale of property of a debtor's estate—maximizing the value of sale proceeds received by the estate.  *See Burtch v. Ganz (In re Mushroom Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that the debtor had the fiduciary duty to maximize and protect the value of the estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that the main goal of any proposed sale of the property of a debtor's estate is to maximize value).  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Off. Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

31.    The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Company.  The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote

active bidding by interested parties and to reach the highest or best offer reasonably available for the Company. Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to timely consummate a Sale Transaction. The Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or best offers for the potential completion of a Sale Transaction.

32.    An orderly and efficient marketing and sale process is critical to preserve and realize the Debtors' going concern value and maximize recoveries for the Debtors' stakeholders. In formulating the Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to timely and competitively run a sale process. The Bidding Procedures provide for marketing of the Company and for the prompt consummation of a Sale Transaction.

33.    Courts in this and other districts have approved procedures substantially similar to the proposed Bidding Procedures. *See, e.g., In re Meyer Burger (Holding) Corp., et al.*, No. 25-11217 (CTG) (Bankr. D. Del. July 18, 2025), Dkt. No. 100; *In re AIO US, Inc.*, No. 24-11836 (CTG) (Bankr. D. Del. Oct. 29, 2024), Dkt. No. 319; *In re Supply Source Enter., Inc.*, No. 24-11054 (BLS) (Bankr. D. Del. July 10, 2024), Dkt. No. 173; *In re Coach USA, Inc.*, No. 24-11258 (MFW) (Bankr. D. Del. July 9, 2024), Dkt. No. 241; *In re Ambri Inc.*, No. 24-10952 (LSS) (Bankr. D. Del. June 12, 2024), Dkt. No. 160; *In re NanoString Techs., Inc.*, No. 24-10160 (CTG) (Bankr. D. Del. Mar. 28, 2024), Dkt. No. 384; *In re Timber Pharms., Inc.*, No. 23-11878 (JKS) (Bankr. D. Del. Jan. 22, 2024), Dkt. No. 126; *In re Armstrong Flooring, Inc.,* No. 22-10426 (MFW) (Bankr. D. Del. May 31, 2022), Dkt. No. 233; *In re Energy Alloys Holdings, LLC,* No. 20-12088 (MFW) (Bankr. D. Del. Nov. 6, 2020), Dkt. No. 153; *In re Imerys Talc Am., Inc.,* No. 19-10289

(LSS) (Bankr. D. Del. June 30, 2020), Dkt. No. 1950; *In re Exide Holdings, Inc.,* No. 20-11157

(CSS) (Bankr. D. Del. May 19, 2020), Dkt. No. 344; *In re Bumble Bee Parent, Inc.*, No. 19-12502

(LSS) (Bankr. D. Del. Dec. 19, 2019), Dkt. No. 171; *In re Fusion Connect, Inc.*, No. 19-11811

(SMB) (Bankr. S.D.N.Y. July 3, 2019), Dkt. No. 164; *In re Basic Energy Servs., Inc.,* No. 21-

90002 (DRJ) (Bankr. S.D. Tex. Aug. 17, 2021) Dkt. No. 179.   Accordingly, the Bidding

Procedures should be approved.

### B.      Sale Transaction

34.      Ample authority exists for approval of a sale envisioned by this Motion.

Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate[.]"  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify

a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of

property of the estate, courts routinely authorize a sale of a debtor's assets if such sale is based

upon the sound business judgment of the debtor.  *See, e.g., Meyers v. Martin (In re Martin)*, 91

F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513,

515 (7th Cir. 1991)); *Off. Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV

Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v.

McClung*, 789 F.2d 386, 388 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re

Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

35.      Courts typically consider the following factors in determining whether a

sale satisfies this standard: (i) whether a sound business justification exists for the sale; (ii) whether

adequate and reasonable notice of the sale was provided to interested parties; (iii) whether the sale

will produce a fair and reasonable price for the property; and (iv) and whether the parties have

acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2

(D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656.

1.   ***The Debtors Have Demonstrated a Sound Business Justification for a Sale Transaction***

36.   A sound business purpose for a sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *see also In re Food Barn Stores, Inc.*, 107 F.3d at 564–65 (recognizing that the paramount goal of any proposed sale of the property of the estate is to maximize value).

37.   As set forth above, a strong business justification exists for a sale of the Company as described herein. A timely and efficient sale process is necessary to realizing the Company's going concern value and, in turn, to maximizing recoveries for the Debtors' stakeholders. Based upon the record to be made at the Sale Hearing, pursuing a sale of the Company, subject to the Debtors' right to consider all restructuring alternatives, represents a reasonable exercise of the Debtors' business judgment and is in the best interests of all parties.

2.   ***The Noticing Procedures Are Reasonable and Appropriate***

38.   The Sale Notice and related relief that the Debtors propose to provide, as set forth in the Bidding Procedures Order and the Bidding Procedures, is adequate and reasonable. Such notice will ensure that actual notice of the Auction, the Sale Hearing, and any Sale Transaction will be provided to all known creditors and contract-counterparties of the Debtors.

Such notice, together with notice by publication, will enable the Court to make findings at the Sale Hearing and in the Sale Order that the ultimate purchaser of the Company, whether it be a potential Stalking Horse Bidder(s) or the Successful Bidder(s), shall not be liable under theories of successor liability in connection with the Company.

### 3. *The Bidding Procedures are Likely to Produce a Fair and Reasonable Purchase Price for the Company*

39.    The Bidding Procedures were carefully designed to facilitate a robust and competitive bidding process.  The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze, and compare all bids received to determine which bids, if any, are in the best interests of the Debtors' estates and their stakeholders.  The Bidding Procedures will serve the important objective of obtaining the highest and best bids for the purchase of the Company, which will enable the Company, as it considers all restructuring alternatives, to realize the highest or best value for the benefit of all parties in interest in these chapter 11 cases.  Importantly, the Bidding Procedures preserve the Debtors' ability to pursue a Sale Transaction through a chapter 11 plan.

### 4. *Protections as Good Faith Purchaser*

40.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor even if approval of a sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal.  Specifically, section 363(m) of the Bankruptcy Code states the following:

> The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . .  does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

41.      Section 363(m) of the Bankruptcy Code fosters the "'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147 (citations omitted); *see Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) of the Bankruptcy Code . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal"); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 296 (3d Cir. 2000) ("[S]ection 363(m) of the Bankruptcy Code . . . protects good faith purchasers or lessees of property of the bankruptcy estate from the effects of a reversal or modification on appeal of the authorization to sell or lease the property, if the appellant fails to obtain a stay."); *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 651 (3d Cir. 1997) (quoting *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990) ("Section 363(m) [of the Bankruptcy Code] patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal.")).

42.      As set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process.  Any asset purchase agreement with a Successful Bidder(s) executed by the Debtors will be negotiated at arm's-length and in good faith.  Accordingly, based upon the record to be made at the Sale Hearing, the Debtors will seek a finding that any Successful Bidder (including any Stalking Horse Bidder, if named the Successful Bidder)

is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

### C. Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

43. In the interest of attracting the best offers, the Debtors' assets should be sold free and clear of any and all liens, claims, interests, and other encumbrances (other than certain assumed liabilities, liens, or as otherwise provided in the applicable purchase agreement), in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances to attach to the proceeds of the applicable sale. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

> (a) applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
>
> (b) such entity consents;
>
> (c) such interest is a lien and the price at which property is to be sold is greater than the value of all liens on such property;
>
> (d) such interest is in bona fide dispute; or
>
> (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) [of the Bankruptcy Code] is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

44. With respect to any party asserting a lien, claim, encumbrance or other interest against the Debtors' assets, based upon the record to be made at the Sale Hearing, the

Debtors will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code.

### D.     Assumption and Assignment of Assigned Contracts Should Be Approved

45.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Upon finding that a debtor has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code.  *See, e.g.*, *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that the debtor's decision to assume or reject executory contract is governed by the business judgment standard and may only be overturned if the decision is a product of bad faith, whim, or caprice).  The "business judgment" test in this context only requires that a debtor demonstrate that the assumption or rejection of an executory contract or unexpired lease benefits the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

46.     The assumption and assignment of the Assigned Contracts in connection with a Sale Transaction is an exercise of the Debtors' sound business judgment because a bidder may determine that such contracts are necessary to operate the Company.  As such, the Debtors' ability to assume and assign executory contracts and leases is essential to obtaining the highest or best offer for the Company.  Moreover, the Assigned Contracts will be assumed and assigned in accordance with the Assumption and Assignment Procedures approved by the Court pursuant to the Bidding Procedures Order.

47. To the extent that consummation of a Sale Transaction will involve the assignment of the Assigned Contracts, it will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court and serve on each Contract and Lease Counterparty, the Assignment and Cure Notice or a Supplemental Assignment and Cure Notice, as applicable, indicating the Debtors' calculation of the Cure Cost for each such Contract and Lease. Such Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder, including the proposed Cure Costs, on or before the applicable deadline. The Debtors' assumption and assignment of Assigned Contracts will be contingent upon payment or reserve of Cure Costs and effective only upon the closing of an applicable Sale Transaction or as otherwise set forth in the applicable purchase agreement.

48. Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that a debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D.

Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and expressed willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

49.    As set forth in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder (other than the Stalking Horse Bidder(s)) must include with its bid adequate assurance regarding its ability to perform under the applicable Assigned Contracts. The Debtors will, upon written request, provide adequate assurance to all Counterparties to any Assigned Contracts or direct the applicable Counterparty to relevant publicly available financial information regarding the Successful Bidder(s), and, upon reasonable request, the Debtors will furnish additional adequate assurance to Counterparties. Counterparties will have an opportunity to file with the Court and serve on the Objection Notice Parties Adequate Assurance Objections on or before the applicable deadline. Based on the foregoing, the Debtors' assumption and assignment of the Assigned Contracts satisfies the requirements under section 365 of the Bankruptcy Code and should be approved.

50.    In addition, to facilitate the assumption and assignment of the Assigned Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or

limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.[11]

### E. Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)

51.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d).

52.     In light of the current circumstances, the Debtors believe a sale of the Company must be consummated as soon as practicable to maximize value.  Accordingly, the Debtors request that each of the Bidding Procedures Order and the Sale Order be effective immediately upon its entry and that the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) be waived.

### Notice

53.     Notice of this Motion will be provided to the following parties or their counsel: (i) the U.S. Trustee (Attn.: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (ii) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Internal Revenue Service; (iv)  the United States Attorney's Office for the District

---

[11]     Section 365(f)(1) of the Bankruptcy Code provides, in part, that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease[.]"  11 U.S.C. § 365(f)(1).  Section 365(f)(3) of the Bankruptcy Code further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

of Delaware; (v) counsel to the Prepetition Junior Term Loan Lender, Prepetition Priority Bridge Loan Lender, and the DIP Lender: (a) Kirkland & Ellis LLP (Attn.: John Luze (john.luze@kirkland.com) and Margaret Reiney (margaret.reiney@kirkland.com)), and (b) Young Conaway Stargatt & Taylor, LLP (Attn.: Michael Nestor (mnestor@ycst.com) and Ryan Bartley (rbartley@ycst.com)); (vi) all persons known or reasonably believed, after reasonable inquiry, to have asserted a lien, encumbrance or any other interest in the Debtors' assets; and (vii) any party that is entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**").  The Debtors, through Cassel Salpeter, will also provide a copy of the Motion to the Potential Interested Parties via email and, once approved, the Bidding Procedures.

54.      The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Bidding Procedures Order and, following the Sale Hearing, the Sale Order and such other and further relief as the Court may deem just and appropriate.

Dated: December 17, 2025
      Wilmington, Delaware

*/s/ James F. McCauley*

RICHARDS, LAYTON & FINGER, P.A.
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
James F. McCauley (No. 6991)
Clint M. Carlisle (No. 7313)
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Email: merchant@rlf.com
      shapiro@rlf.com
      mccauley@rlf.com
      carlisle@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Email: davidj.cohen@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Daphne S. Papadatos (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Emails: ronit.berkovich@weil.com
      daphne.papadatos@weil.com

*Proposed Attorneys for the Debtors*
*and the Debtors in Possession*