## Exhibit A

**Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                      :

In re                             :        Chapter 11
                                        :

**GBI SERVICES, LLC,** *et al.*,     :        **Case No. 25–12089 (CTG)**
                                        :

          Debtors.[1]         :        **(Jointly Administered)**
                                        :

------------------------------------------------------------ x    Re: Docket No. __

## ORDER (I) (A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B) AUTHORIZING DESIGNATION OF STALKING HORSE BIDDER, (C) AUTHORIZING CONDUCT OF THE AUCTION AND SALE HEARING, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, AND (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF

Upon the motion, dated December 17, 2025 (Docket No. [●]) (the "**Motion**"),[2] of

GBI Services, LLC, and certain of its affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**" and together with their non-Debtor

affiliates, the "**Company**"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy

Code, Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules

of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy**

**Rules**"), for entry of an order(this "**Bidding Procedures Order**"):  (i)(a) approving the bidding

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669).  The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

procedures, substantially in the form attached hereto as **Exhibit 1** (the "**Bidding Procedures**"), in connection with the sale of substantially all of the Debtors' assets; (b) authorizing the Debtors to designate one or more stalking horse bidders (each, a "**Stalking Horse Bidder**," and collectively, the "**Stalking Horse Bidders**", and such bidders' bids, the "**Stalking Horse Bids**"); (c) conducting an auction (the "**Auction**"), if necessary, and a hearing for approval of the proposed Sale Transaction (as defined below) (the "**Sale Hearing**"); (d) approving the form and manner of (1) notice of the Auction, the sale of the Company (the "**Sale Transaction**"), and the Sale Hearing, substantially in the form annexed hereto as **Exhibit 2** (the "**Sale Notice**"), and (2) notice to each non-Debtor counterparty (each, a "**Counterparty**") to a proposed Assigned Contract setting forth the Debtors' calculation of the amount necessary to cure any monetary defaults under such contract or lease (the "**Cure Costs**"), substantially in the form attached hereto as **Exhibit 3** (the "**Assignment and Cure Notice**"); (e) approving procedures for the assumption and assignment of proposed Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (ii) granting related relief, all as more fully set forth in the Motion; and the United States Bankruptcy Court for the District of Delaware (the "**Court**") having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief granted

herein; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Statutory and Legal Predicates</u>.  The predicates for relief granted herein are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1 and 9006-1.  This Court has jurisdiction to hear and determine the Motion and to grant the relief requested herein with respect to the Bidding Procedures pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve:  (i) the Bidding Procedures; (ii) the Debtors' ability to designate one or more Stalking Horse Bidders; (iii) the procedures for the provision of the Stalking Horse Bid Protections; (iv) the Assumption and Assignment Procedures; and (v) the form and manner of notice of the Auction and the Sale Hearing.  The Bidding Procedures are fair, reasonable, appropriate and designed to maximize the value of the Company.  The Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Company.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      <u>Notice</u>.  Good and sufficient notice of the Motion, the Bidding Procedures, and the relief granted herein has been given under the circumstances, and no other or further notice is required except as otherwise set forth herein and in the Bidding Procedures.  A reasonable opportunity to object or be heard regarding the relief granted herein has been afforded to all parties in interest.

D.      <u>Procedures for Designation of Stalking Horse Bid</u>.  Good and sufficient business reasons exist to authorize the Debtors to designate one or more Stalking Horse Bidders, offer such Stalking Horse Bidders Stalking Horse Bid Protections, and to enter into a purchase agreement with such Stalking Horse Bidders (each, a "**Stalking Horse Agreement**"), subject to further Court approval in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

E.      <u>Assumption and Assignment Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **Exhibit 2** and the form of Assignment and Cure Notice attached hereto as **Exhibit 3**, are fair and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto.  The Assumption and Assignment Procedures provide an adequate opportunity for all Counterparties to raise any objections to the proposed assumption and assignment and proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.      <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto,

and no other or further notice shall be required for the procedures described therein, except as expressly required herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Company and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Bidding Procedures Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.  If there is any conflict between the terms of this Bidding Procedures Order and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

4.      The Debtors are authorized to implement the Bidding Procedures, in accordance with the following timeline, as may be extended or modified in the Debtors' reasonable business judgment in good faith by filing a notice of such extension or modification on the Court's docket.

| Key Event | Deadline |
|---|---|
| Deadline to File and Serve Initial Assumption and Assignment Notice | January 20, 2026 (or three (3) business days after entry of the Bidding Procedures Order) |
| Deadline to submit Non-Binding Indications of Interest | January 20, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to file (i) Consent Right Objections and (ii) Cure Cost Objections | January 30, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to submit Bids (the "**Bid Deadline**") | February 2, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to notify Bidders of status as Qualified Bidders | 1 (one) business day prior to Auction |
| Auction, if necessary, to be conducted at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders (if other Qualified Bids received for the Company) | February 4, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Deadline to file Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) (if an Auction is held) | Within one (1) business day after the conclusion of the Auction |
| Deadline to file Objections to (i) Sale Transaction and (ii) Adequate Assurance of Future Performance | February 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to Reply to Objections to (i) Sale Transaction, (ii) Cure Costs, and (iii) Adequate Assurance of Future Performance | February 12, 2026 at 12:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | February 13, 2026 (subject to Court availability) |

## Designation of Stalking Horse Bidder

5.     The Debtors are authorized, in the exercise of their reasonable business judgment, to designate one or more Stalking Horse Bids for the Company in accordance with the procedures set forth herein.

6.      In the event the Debtors designate one or more Stalking Horse Bidder(s), the Debtors shall seek approval of such Stalking Horse Bidder(s), the applicable Stalking Horse Agreement(s), and any Stalking Horse Bid Protections, and may do so on an expedited basis pursuant to Section 105(a) of the Bankruptcy Code and Local Bankruptcy Rule 9006-1(e).  Upon the designation of one or more Stalking Horse Bidder(s), the Debtors shall file with the Court, serve on the Objection Notice Parties, and cause to be published on the website of the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC ("**Epiq**"), at https://dm.epiq11.com/case/nck/info (the "**Epiq Website**"):  (i) a notice setting forth the (a) identity of the Stalking Horse Bidder(s), (b) material terms of the Stalking Horse Agreement(s), including the terms of any proposed Stalking Horse Bid Protections, and (c) procedures and deadlines governing objections to any proposed Stalking Horse Agreement(s), including the objection deadline by which any interested parties may object to the designation of the Stalking Horse Bidder (each, a "**Notice of Stalking Horse Bidder**"); (ii) a copy of any Stalking Horse Agreement(s); (iii) a declaration in support of the Stalking Horse Agreement and Stalking Horse Bid Protections (the "**Stalking Horse Declaration**"); and (iv) a proposed order authorizing and approving the Stalking Horse Bid Protections (the "**Proposed Stalking Horse Order**").

7.      Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Objection Notice Parties no later than three (3) business days after the service of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").  If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably

practicable seeking approval of such Stalking Horse Bid in accordance with this Bidding Procedures Order and the Bidding Procedures.

8.　　If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bidder, upon the expiration of the Stalking Horse Objection Deadline, the Debtors may submit the Proposed Stalking Horse Order under certification of counsel, which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Stalking Horse Bid Protections set forth in the Stalking Horse Declaration and Notice of Stalking Horse Bidder.

9.　　Except as specifically authorized herein, absent further order of the Court, no person or entity shall be entitled to any Stalking Horse Bid Protections, including, but not limited to, expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Company or participating in the Auction or the Debtors' sale process.

**Bidding Procedures**

10.　　The Bidding Procedures, attached hereto as **Exhibit 1**, are approved and incorporated herein by reference, and shall apply with respect to any bids for, and the Auction and sale of the Company.

11.　　Absent advance consent of the Debtors, pursuant to 18 U.S.C. §§ 156 and 157, Potential Bidders and their representatives may not in their capacity as such communicate with one another, collude, or otherwise coordinate (including regarding a joint bid), regarding any potential or submitted bid or for purposes of participating in the Auction. All parties are prohibited from: (i) engaging in any collusion with respect to the submission of any bid or the Auction; (ii) entering into an agreement or negotiating towards terms of an agreement that would restrict a

party's ability to submit a bid or engage in discussions with other parties surrounding the submission of a bid (except in accordance with this Bidding Procedures Order and the Bidding Procedures); or (iii) taking any other action to prevent a transparent and competitive auction process.  Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that:  (i) it has not engaged in any of the foregoing prohibited actions; and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder or Back-Up Bidder.  The Debtors reserve the right, in their reasonable business judgment, to disqualify any Potential Bidders that fail to comply with any of the foregoing.

12.    The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

### Objections to Sale Transaction

13.    Within one (1) business day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Objection Notice Parties, and cause to be published on the Epiq Website, a Notice of Auction Results.

14.    Objections to the Sale Transaction (each, a "**Sale Objection**"), must:  (i) be in writing; (ii) state the name and address of the objecting party and, if applicable, the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, if such objection is limited in nature, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (v) be filed with the Court no later than **February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"); and (vi) shall be served

on the Objection Notice Parties and the Successful Bidder (which may be the Stalking Horse Bidder).

15.     Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the Sale Transaction, or to the consummation and performance of the Sale Transaction contemplated by a purchase agreement, including the transfer of the Debtors' assets to a Successful Bidder(s), free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code.  Any objection filed after the Sale Objection Deadline will not be considered by the Court unless otherwise ordered by the Court.

16.     In the event that a Successful Bidder does not consummate the proposed Sale Transaction and a Back-Up Bidder has been previously identified, the Debtors shall be authorized to consummate the Back-Up Bid to the extent set forth in the Sale Order.

### Sale Hearing

17.     The Sale Hearing shall commence on **February 13, 2026, at [●] a.m./p.m. (prevailing Eastern Time)** before the Honorable Craig T. Goldblatt at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned without further notice to parties in interest other than filing a notice on the Court's docket indicating such adjournment (which notice may be the notice of agenda) or announcing the adjournment at the Sale Hearing.

### Sale Notice

18.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transaction, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required if the Debtors serve the Sale Notice on the Sale

Notice Parties, all Counterparties and all parties identified on the Debtors' creditor matrix, and publish such notice, including any Notice of Stalking Horse Bidder, in the manner provided in the Bidding Procedures and this Bidding Procedures Order.

19.     The Sale Notice contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.  Service of the Sale Notice as described above shall be good and sufficient notice of the Sale Transaction and the Assumption and Assignment Procedures with respect to known interested parties.

### Consent Right Objection Procedures

20.     The notice of the deadline to file a Consent Right Objection (as defined below) applicable to holders of Consent Rights (as defined below) is reasonable and appropriate under the circumstances, fair to all Counterparties, complies in all respects with the Bankruptcy Code, and is approved.  The Debtors will assign to the Successful Bidder(s), pursuant to the applicable asset purchase agreement, certain contracts, agreements, leases and other assets, free and clear of all liens, claims, interests, and encumbrances (other than certain assumed liabilities, liens or as otherwise provided in the applicable purchase agreement).  Subject to Court approval, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "**Consent Right**"), then such party must file with the Court, an objection identifying:  (i) such contract(s), lease(s), or other agreement(s); (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s); and (iii) all supporting documentation (each, a "**Consent Right Objection**"), no later than **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)**.  If a party files a Consent Right Objection in a manner that is

consistent with the requirements set forth above and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by the Court at the Sale Hearing or such later hearing as may be determined by the Debtors on notice to the objecting party.

21.     Any person failing to timely file a Consent Right Objection will be: (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights (other than certain assumed liabilities, liens or as otherwise provided in the applicable purchase agreement) and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and encumbrances, including Consent Rights (other than certain assumed liabilities, liens or as otherwise provided in the applicable purchase agreement), regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.

22.     If any person files a Consent Right Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Consent Right Objection (and serving such response on the objecting party) **on or before February 12, 2026 at 12:00 p.m. (prevailing Eastern Time)**.

23.     Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or

any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

**Assumption and Assignment Procedures**

24.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

25.     The Assignment and Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, and is hereby approved.

26.     The Assignment and Cure Notice, including any Supplemental Assignment and Cure Notice (as defined below), is reasonably calculated to provide sufficient notice to the Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts in connection with the Sale Transaction and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Bidding Procedures Order.

27.     The Debtors shall file the Assignment and Cure Notice with the Court and, as soon as reasonably practicable thereafter, the Debtors shall post a copy of the Assignment and Cure Notice on the Epiq Website, and serve the Assignment and Cure Notice on all Counterparties regarding the proposed assumption and assignment of Assigned Contracts on **January 20, 2026** (or three (3) business days after entry of this Bidding Procedures Order).  The Assignment and

Cure Notice will identify the Debtors' calculation of any Cure Costs payable if the Debtors ultimately assume and assign such Contract and Lease

28.     In accordance with the Bidding Procedures, each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transaction including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "**Adequate Assurance Information**").

29.     On the date of service of the Notice of Auction Results (or such other notice identifying a Successful Bidder), or as soon as reasonably practicable thereafter, upon written request to the Debtors, the Debtors shall provide, or cause to be provided, to all Counterparties of proposed Assigned Contracts Adequate Assurance Information for the Successful Bidder on a strictly confidential basis.  Such Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection (as defined herein) filed by such Counterparty; *provided, that,* if a Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

30.     Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and/or to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") in respect of a proposed Assigned Contract must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases thereof, including, for Cure Objections, the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Assigned Contract; (iv) conform to the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules; and (v) be filed with the Court on or before: (a) in the case of a Cure Objection, **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)** and (b) in the case of an Adequate Assurance Objection **February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

31.     If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing or such later hearing as determined by the Debtors upon notice to the Counterparty. If any Cure Objection cannot otherwise be resolved by the parties, the Debtors may assume the Assigned Contract(s) and assign the Assigned Contract(s) to the Successful Bidder(s) prior to the resolution of the Cure Objection if the disputed portion of the Cure Cost(s) is reserved.

32.     If:  (i) the Debtors identify (a) additional contracts or leases to be assumed and assigned to a Successful Bidder (any "**Additional Assigned Contracts**"), or (b) modifications that need to be made to a proposed Cure Cost previously stated in the Assignment and Cure Notice; or (ii) a Successful Bidder designates any additional contracts or leases not previously included on the Assignment and Cure Notice for assumption in accordance with the time period set forth in the applicable purchase agreement between the Debtors and such Successful Bidder, the Debtors shall promptly file with the Court and serve on the applicable Counterparty a supplemental Assignment

and Cure Notice (each, a "**Supplemental Assignment and Cure Notice**," the form of which shall be substantially similar to the form of Assignment and Cure Notice attached hereto as **Exhibit 3**). As soon as reasonably practicable after filing a Supplemental Assignment and Cure Notice, the Debtors shall post a copy of the Supplemental Assignment and Cure Notice on the Epiq Website. Any Cure Objection with respect to Cure Costs set forth in a Supplemental Assignment and Cure Notice or any Adequate Assurance Objection with respect to the provision of adequate assurance of future performance must be filed no less than ten (10) calendar days after service of a Supplemental Assignment and Cure Notice.

33.    If no timely Cure Objection is filed in respect of an Assigned Contract, the Cure Cost identified on the Assignment and Cure Notice or a Supplemental Assignment and Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder(s).

34.    If no timely Adequate Assurance Objection is filed with respect to an Assigned Contract or a Successful Bidder, the Successful Bidder will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code and the Counterparty shall forever be barred from asserting against the Debtors, their estates, and a Successful Bidder, any additional obligation to provide adequate assurance of future performance.

35.    Further, if no timely Cure Objection or Adequate Assurance Objection is filed with respect to an Assigned Contract, the relevant Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder(s).

36.     The inclusion of a contract, lease, or other agreement on the Assignment and Cure Notice or any Supplemental Assignment and Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved). The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Assignment and Cure Notice or any Supplemental Assignment and Cure Notice.

### Fiduciary Out

37.     Nothing in the Bidding Procedures will require the Debtors to take any action, or to refrain from taking any action to the extent the Debtors determine that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or their fiduciary obligations under applicable law (the "**Fiduciary Out**"). In the event the Debtors exercise their Fiduciary Out, the Debtors shall provide notice to the DIP Lender as soon as reasonably practicable thereafter.

### General Provisions

38.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily: (i) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures Order (including any disputes relating to the bidding process, the Auction and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (ii) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

39.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9007, 9008, and 9014, or any applicable provisions of the Local Bankruptcy Rules or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bidding Procedures Order.

40.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Bidding Procedures Order.

41.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

## <u>Exhibit 1</u>

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                             :     **Chapter 11**

**In re**                        :

                             :     **Case No. 25-12089 (CTG)**

**GBI SERVICES, LLC,** *et al.,*     :

                             :

               **Debtors.** [1]     :     **(Jointly Administered)**

                             :

------------------------------------------------------------ x

## BIDDING PROCEDURES

### Overview

On November 21, 2025 (the "**Petition Date**"), GBI Services, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). The Debtors are authorized to continue to operate their business as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2026, the Court entered an order (Docket No. [●]) (the "**Bidding Procedures Order**")[2], which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for substantially all of the Debtors' assets.[3]

The Bidding Procedures describe, among other things: (i) the procedures for designating one or more Stalking Horse Bids and Stalking Horse Bidders,[4] if any; (ii) the procedures for bidders to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669). The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

[3]    For the avoidance of doubt, the Debtors reserve all rights regarding the form of Sale Transaction and may pursue (i) a Sale Transaction pursuant to section 363 of the Bankruptcy Code or (ii) a Sale Transaction or other restructuring transaction pursuant to a chapter 11 plan.

[4]    The Debtors may allow one or more bidders to submit a joint Bid for the Company. If the Debtors designate a joint Bid submitted by multiple bidders as the Stalking Horse Bid, a reference in the Bidding Procedures Order

submit bids ("**Bids**") for the Company, subject to an order of the Court approving such potential sale transaction; (iii) the manner in which bidders and Bids become Qualified Bidders and Qualified Bids (each as defined herein); (iv) the process for negotiating the Bids received; (v) the conduct of the Auction (as defined herein) if the Debtors receive more than one Qualified Bid; (vi) the procedures for the ultimate selection of any Successful Bidder and any Back-Up Bidder (each as defined herein); (vii) authorization of the sale of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and, if necessary, completion of the Auction (collectively, the "**Sale Transaction**"); and (viii) the process for approval of the Sale Transaction at the Sale Hearing (as defined herein).

## <u>Summary of Important Dates</u>

These Bidding Procedures provide interested parties with the opportunity to submit competing bids for the Company and, where more than one Qualified Bid is received, to participate in an auction to be conducted by the Debtors (the "**Auction**").  At the Auction, the Debtors may, in the exercise of their business judgment, identify the highest or otherwise best Qualified Bid as the successful bid (the "**Successful Bid**," and the bidder submitting such bid, the "**Successful Bidder**").

The key dates for the sale process are set out in the below timeline (the "**Sale Timeline**").  The Debtors are authorized to extend or modify the Sale Timeline in the Debtors' reasonable business judgment in good faith by filing a notice of such extension or modification on the Court's docket.

| Key Event | Deadline |
|---|---|
| Deadline to File and Serve Initial Assumption and Assignment Notice | January 20, 2026 (or three (3) business days after entry of the Bidding Procedures Order) |
| Deadline to submit Non-Binding Indications of Interest | January 20, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to file (i) Consent Right Objections and (ii) Cure Cost Objections | January 30, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to submit Bids (the "**Bid Deadline**") | February 2, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to notify Bidders of status as Qualified Bidders | 1 (one) business day prior to Auction |

---

or these Bidding Procedures to the Stalking Horse Bidder is a reference to each bidder who jointly submitted the Stalking Horse Bid individually, and each of the bidders collectively, as appropriate.

| | |
|---|---|
| Auction, if necessary, to be conducted at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders (if other Qualified Bids received for the Company) | February 4, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Deadline to file Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) (if an Auction is held) | Within one (1) business day after the conclusion of the Auction |
| Deadline to file Objections to (i) Sale Transaction and (ii) Adequate Assurance of Future Performance | February 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to Reply to Objections to (i) Sale Transaction, (ii) Cure Costs, and (iii) Adequate Assurance of Future Performance | February 12, 2026 at 12:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | February 13, 2026 (subject to Court availability) |

### Sale of the Company

Parties may submit bids for the Company.  Parties may not submit join bids for the Company absent receiving advance authorization from the Debtors.

### Designation of Stalking Horse Bidder

The Debtors may, in the exercise of their reasonable business judgement, select one or more bids submitted to the Debtors as a "stalking horse" (each, a "**Stalking Horse Bidder**" and such bidders' bids, the "**Stalking Horse Bids**"), offer bid protections to the proposed Stalking Horse Bidder(s) (the "**Stalking Horse Bid Protections**"), and enter into a purchase agreement with such Stalking Horse Bidder(s) (the "**Stalking Horse Agreement**"), in each case subject to further Court approval which the Debtors may seek on an expedited basis pursuant to the Bidding Procedures Order.

The Stalking Horse Bid Protections which the Debtors may, subject to Court approval, agree to provide a Stalking Horse Bidder(s) include, among other things:  (i) a break-up fee and expense reimbursement upon the terms and in an amount agreed to by the Debtors (collectively, the "**Termination Payment**"); and (ii) other appropriate and customary protections to a Stalking Horse Bidder.

For all purposes under the Bidding Procedures, a Stalking Horse Bidder selected and approved pursuant to the Bidding Procedures Order and these Bidding Procedures shall be deemed a Qualified Bidder, and a Stalking Horse Bid selected and approved pursuant to the Bidding Procedures Order and these Bidding Procedures shall be considered a Qualified Bid.  The Stalking

Horse Bid, if any, will be subject to higher or better offers submitted in accordance with the terms and conditions of these Bidding Procedures. In the event that the Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, the Stalking Horse Bidder may be deemed the Successful Bidder.

## Due Diligence

The Debtors' proposed investment banker, Cassel Salpeter & Co., LLC ("**Cassel Salpeter**"), has posted copies of all material documents related to the Company to the Debtors' confidential electronic data room (the "**Data Room**"). To access the Data Room, a party must submit to the Debtor Notice Parties:

(A)     an executed confidentiality agreement in form and substance that is reasonably satisfactory to the Debtors; and

(B)     upon request by the Debtors, sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, that the interested party (i) has the financial wherewithal to consummate the Sale Transaction, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "**Potential Bidder**."

Notwithstanding the foregoing, the DIP Lender shall have access to the data room subject to the confidentiality provisions of the DIP Credit Agreement (as defined below).

As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; *provided, that,* such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement, or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the Sale Transaction.

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to Cassel Salpeter (Attn: James Cassel (jcassel@cs-ib.com) and Philip Cassel

(pcassel@cs-ib.com)).  In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Company to any person or entity who:  (i) is not a Potential Bidder; (ii) does not comply with the participation requirements set forth herein; or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors.

Each Qualified Bidder shall be deemed to acknowledge and represent that:  (i) it has had an opportunity to (a) conduct any and all due diligence regarding the Company prior to making a bid and (b) investigate and/or inspect any documents and the Company in making its bid; (ii) it has relied solely upon its own independent review in making its bid; and (iii) it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Company, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.  The Debtors and their estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bidding Procedures and the Sale Transaction.

### Non-Binding Indications of Interest

Parties interested in acquiring the Company are encouraged to submit an indication of interest to the Debtors by **January 20, 2026 at 4:00 p.m. (prevailing Eastern Time)** in writing (each, a "**Non-Binding Indication of Interest**").  Non-Binding Indications of Interest should be sent to the Debtor Notice Parties.

Submitting a Non-Binding Indication of Interest by the deadline listed above does not obligate the interested party to consummate a transaction, submit a formal bid, or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder.  It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline or comply with these Bidding Procedures to participate in any subsequent Auction, all as described below.  For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

### Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver electronic copies of its Bid to the Debtor Notice Parties so as to be received no later than **February 2, 2026 at 4:00 p.m.  (prevailing Eastern Time)** (the "**Bid Deadline**"); *provided, that,* the Debtors may extend the Bid Deadline subject to providing notice to all Potential Bidders.  **The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Company or the assets subject to such Bid, as applicable.**  Notwithstanding anything to the contrary in these Bidding Procedures, any party that does not submit a Bid by the Bid Deadline will not be allowed to:  (i) submit any offer after the Bid Deadline; or (ii) participate in any Auction.

**Form and Content of Qualified Bid**

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the Bid.  To constitute a "**Qualified Bid**," a Bid must include, at a minimum, the following:[5]

    i.    <u>Proposed Agreement</u>.  Each Bid must include an executed agreement (the "**Proposed Agreement**") for the acquisition of the Company marked with a redline to show the specific changes to the Proposed Agreement to the applicable form agreement distributed to Potential Bidders.  If there is a Stalking Horse Bid, the Proposed Agreement related to such Bid must be redlined against the relevant Stalking Horse Agreement.  The Proposed Agreement shall:

        (a)    include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the Stalking Horse Agreement or form agreement distributed by the Debtors to Potential Bidders, as applicable; and

        (b)    not condition the closing of the proposed Sale Transaction on the receipt of any third party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

    ii.    <u>Purchase Price; Assets; Assumed Liabilities</u>.  Each Bid must clearly set forth, as applicable:

        (a)    <u>Purchase Price</u>.  Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**") in U.S. dollars.

        (b)    <u>Form of Consideration</u>.  Each Bid must indicate whether it is an all-cash offer (including confirmation that the cash component of the Bid is based in U.S. Dollars) or consists of a non-cash component in the form of a credit bid.

        (c)    <u>All-Cash Offer</u>.  Each Bid that is an all-cash offer must identify that the Purchase Price is to be paid in cash in full, unless otherwise agreed by the Debtors; *provided*, *that*, if the assets proposed to be acquired by a Bid are subject to a Stalking Horse Bid, each Qualified Bid must provide cash consideration sufficient to satisfy the payment of any Termination Payment in cash in full.

        (d)    <u>Credit Bid</u>.  Persons or entities holding a perfected security interest in the Debtors' assets may, pursuant to section 363(k) of the Bankruptcy Code, seek to submit a credit bid on such assets, to the extent permitted by

---

[5]    The Debtors may waive any of the requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote Bids and a robust auction; *provided*, *that*, any such modifications shall not be inconsistent with the Bidding Procedures Order, or any other order of the Court.

applicable law, any Bankruptcy Court orders, and the documentation governing the Debtors' prepetition or postpetition secured credit facilities.

1.  <u>Direction Letter</u>.  To the extent applicable, a credit bid must include a copy of the direction by the applicable lenders to the applicable agent to authorize the submission of such credit bid.

2.  <u>Cash Requirements</u>.  If a credit bid is submitted for any portion of the assets, such Bid shall include an amount sufficient to pay the Termination Payment in cash.

3.  <u>Right to Credit Bid</u>.  In accordance with the terms of the DIP Credit Agreement[6] approved by the Court in the Interim DIP Order,[7] (i) subject to Section 363(k) of the Bankruptcy Code until the entry of the Final Order, the DIP Lender shall have the immediate right to credit bid in accordance with the DIP Loan Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof); (ii) subject to any Challenge, section 363(k) of the Bankruptcy Code, and to the entry of the Final Order granting such relief, the Prepetition Priority Bridge Loan Lender shall have the right to credit bid in accordance with Prepetition Priority Bridge Loan Credit Documents, up to the full amount of the Prepetition Priority Bridge Loan Obligations (including any Adequate Protection Obligations), in any sale of the Prepetition Collateral (or any portion thereof); and (iii) subject to any Challenge, section 363(k) of the Bankruptcy Code, and to the entry of the Final Order granting such relief, the Prepetition Junior Term Loan Lender shall have the right to credit bid in accordance with Prepetition Junior Term Loan Documents, up to the full amount of the Prepetition Junior Term Loan Obligations (including any Adequate Protection Obligations), in any sale of the Prepetition Collateral (or any portion thereof), in each case (a) without the need for further Court order authorizing the same, and (b) whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  The DIP Lender shall be deemed a Qualified Bidder for each of the assets for which it timely submits a credit bid on account of the DIP Obligations.  For the avoidance of doubt, nothing in the

---

[6]   Capitalized terms in this sub-section have the meanings ascribed to them in the Interim DIP Order.

[7]   The "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superiority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* entered by the Court on November 26, 2025 [Docket No. 55].

Bidding Procedures Order or these Bidding Procedures abrogates any right to commence a Challenge.

(e)     <u>Assets Purchased</u>: Each Bid must, in the Proposed Agreement, clearly state the assets contemplated by, or excluded from, the proposal.

(f)     <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the bidder seeks to assume.

iii.     <u>Unconditional Offer / Contingencies</u>.  Each Bid must contain a statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of the Sale Transaction.

iv.     <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transaction, including financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to any unreasonable conditions in the Debtors' discretion), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transaction in a timely manner.

v.     <u>Designation of Contracts and Leases</u>.  Each Bid must identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is contemplated by the applicable Sale Transaction.

vi.     <u>TSA Requirement</u>.  Each Bid must identify whether transition services will be needed, the type of such services, and the duration such services are needed.

vii.     <u>Required Approvals</u>.  Each Bid must include a statement or evidence: (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal approval, or (c) the outcome or review of outstanding or unperformed due diligence; (ii) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the Sales Transaction,

if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii.  <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (i) fully disclose the identity of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

ix.  <u>No Entitlement to Break-Up Fee, Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

x.  <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer, director, or equity owner of the Debtors.

xi.  <u>Joint Bids</u>. The Debtors may approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

xii.  <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

(a)  a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the Company prior to submitting its Bid;

(b)  a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Company in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or

guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Company or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

(c)     a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the Company;

(d)     a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) entered into an agreement or negotiated towards terms of an agreement that would restrict a party's ability to submit a bid or engage in discussions with other parties surrounding the submission of a bid,[8] or (iii) taken any other action to, or that could, prevent a transparent and competitive auction process; *provided, that*, certain joint bids may be permitted in the Debtors' discretion as set forth herein;

(e)     a statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

(f)     a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

i.     a cash deposit in the amount of ten percent (10%) of the proposed Purchase Price for any portion of the Purchase Price that is not subject to a valid credit bid (a "**Good Faith Deposit**"), *provided*, *however*, that in the event the DIP Lender submits a valid credit bid that includes a cash component, the DIP Obligations may be used as a credit towards such Good Faith Deposit requirement, and the amount of the DIP Obligations used as credit towards the Good Faith Deposit shall be subject to forfeiture as further set out below and, if forfeited, the DIP Obligations shall be reduced by the amount forfeited and shall not need to be repaid by the Debtors;

ii.     the contact information of the specific person(s) whom the Debtors or its advisors should contact in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder; and

---

[8]     For the avoidance of doubt, prior to any Potential Bidder in its capacity as such engaging in any communication with another Potential Bidder in its capacity as such regarding a potential Bid, the Potential Bidder initiating such communication must obtain consent from the Debtors.

     iii.    a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

**Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein, including at the Auction.**

## Good Faith Deposit

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. A deposit is not required for any credit bid portion of such Qualified Bid to the extent such credit bid is valid, *provided*, *however*, that in the event the DIP Lender submits a valid credit bid that includes a cash component, the DIP Obligations may be used as a credit towards such Good Faith Deposit requirement, and the amount of the DIP Obligations used as credit towards the Good Faith Deposit shall be subject to forfeiture as further set out below and, if forfeited, the DIP Obligations shall be reduced by the amount forfeited and shall not need to be repaid by the Debtors.

A Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if: (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted under these Bidding Procedures or the Bidding Procedures Order, or with the Debtors' prior written consent during the time the Qualified Bid remains binding and irrevocable; or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and fails to enter into the required definitive documentation or to consummate the Sale Transaction in accordance with the Bidding Procedures. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. No party has or shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bidding Procedures.

## Review of Bids and Designation of Qualified Bids

The Debtors will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate, in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors to meet the requirements set forth herein will be considered a Qualified Bid and any bidder that submits a Qualified Bid (including the Stalking Horse Bid(s), if any) will be considered a "**Qualified Bidder**."

By no later than **one (1) business day prior to the Auction** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable business judgment, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

i.      the amount and the form of consideration included in the Purchase Price set forth in the Bid;

ii.     the assets and liabilities included in or excluded from the Bid, including any executory contracts or leases or other liabilities proposed to be assumed;

iii.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment, as applicable;

iv.     any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

v.      the transaction structure and execution risk, including: conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

vi.     the impact on trade creditors; and

vii.    any other factors the Debtors may deem relevant, consistent with their fiduciary duties.

The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

### Failure to Receive More than One (1) Qualified Bid

If the Debtors determine that no Qualified Bid (other than a Stalking Horse Bid) was received by the Qualified Bid Deadline or only one (1) Qualified Bid was received by the Qualified Bid Deadline, the Debtors may choose not to conduct the Auction, and may file a notice with the Court indicating that no Auction will be held. The Debtors shall also publish such notice on the Epiq Website.

To the extent the only Qualified Bid received is from the Stalking Horse Bidder(s) or only one (1) Qualified Bid is received, as applicable, such bidder may be named the Successful Bidder(s) and a Sale Hearing with respect to the sale of the Company to such bidder(s) will be held on **February 13, 2026 at [●]:00 a.m./p.m**. The Debtors will serve on the Objection Notice Parties, and cause to be published on the Epiq Website a notice: (1) indicating that the Auction for the Company has

been cancelled; (2) indicating that such bidder is the Successful Bidder for the Company; and (3) setting forth the date and time of the Sale Hearing.

**Auction Procedures**

If the Debtors receive two (2) or more Qualified Bids for the Company, the Debtors shall conduct the Auction on **February 4, 2026 at 10:00 a.m. (prevailing Eastern Time) at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Debtors, and the DIP Lender shall be permitted to attend and observe the Auction *provided*, *that*, upon the DIP Lender's submission of a Qualified Bid, the DIP Lender and its professionals or advisors shall be permitted to attend the Auction in their capacity as a Qualified Bidder. A creditor of the Debtors may attend and observe the Auction; *provided, that*, such creditor provides the Debtors with written notice of its intention to attend the Auction on or before one (1) business day prior to the Auction, which written notice shall be sent to the Debtor Notice Parties via electronic mail.

The Debtors may adjourn or continue the Auction to a later date by filing a notice prior to, or making an announcement at, the Sale Hearing.

The following auction rules shall apply to the Auction to promote a spirited and robust bidding process (the "**Auction Rules**"). All Qualified Bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "**Overbid**") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

At the Auction, Qualified Bidders (including a Stalking Horse Bidder, if applicable) will be permitted to increase their bids. At the outset of the Auction, the Debtors will determine and announce the highest or otherwise best bid for the Company, which bid will serve as the starting bid (the "**Starting Bid**"). Bidding will start at the Purchase Price and terms proposed in the Starting Bid, and will proceed thereafter in increments to be announced at the Auction by the Debtors (a "**Minimum Overbid Amount**"). Subject to the Stalking Horse Protections (if any), the Minimum Overbid Amount with respect to a Stalking Horse Bid (if any), whether in one or a combination of Qualified Bids, shall be the amount of the Termination Payment, if applicable, plus an amount announced by the Debtors. The Debtors reserve the right to increase or decrease the Minimum Overbid Amount at any time during the Auction. A Stalking Horse Bidder, if any, is authorized to increase its Bid at the Auction. If a Stalking Horse Bidder bids at the Auction, such

13

Stalking Horse Bidder will also be entitled to include in its Bid the cash and other consideration proposed by the Stalking Horse Bidder plus the Termination Payment.

The Debtors may adopt additional rules for the Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of maximizing the value of the Company and that such rules are not inconsistent with the Bidding Procedures Order or these Bidding Procedures.

Absent advance consent of the Debtors, pursuant to 18 U.S.C. §§ 156 and 157, Potential Bidders and their representatives may not in their capacity as such communicate with one another, collude, or otherwise coordinate (including regarding a joint bid), regarding any potential or submitted bid or for purposes of participating in the Auction.  All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) entering into an agreement or negotiating towards terms of an agreement that would restrict a party's ability to submit a bid or engage in discussions with other parties surrounding the submission of a bid,[9] or (iii) taking any other action to prevent a transparent and competitive auction process; *provided, that*, certain joint bids may be permitted with advance consent of the Debtors.  The Debtors reserve the right, in their reasonable business judgment, to disqualify any Potential Bidders that fail to comply with any of the foregoing.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided, that,* parties may speak with clients or parties necessary to place or increase their bid so long as such individuals are advised of the confidentiality restriction.

The Debtors may, in the exercise of their business judgment, identify the highest or otherwise best Qualified Bid as the Successful Bid and the bidder submitting such bid, the Successful Bidder.  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (the "**Back-Up Bid**" and the bidder submitting such bid, the "**Back-Up Bidder**").

A Back-Up Bid shall remain open and irrevocable until the earliest to occur of:  (i) consummation of the Sale Transaction with a Successful Bidder; (ii) 180 calendar days following the date on which the Debtors identified the Back-Up Bidder's Bid as the Back-Up Bid; and (iii) the release of such Back-Up Bid by the Debtors in writing (such date, the "**Back-Up Bid Expiration Date**").  If a Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bidder.

Prior to the close of the Auction, the Successful Bidder shall submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted.  Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, the Successful Bidder shall, unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount required to increase the Successful Bidder's Good Faith Deposit to an

---

[9]    For the avoidance of doubt, prior to any Potential Bidder in its capacity as such engaging in any communication with another Potential Bidder in its capacity as such regarding a potential Bid, the Potential Bidder initiating such communication must obtain consent from the Debtors.

amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by a Stalking Horse Bidder (as applicable) or other Qualified Bidders to such designated account shall only be for purposes of this process. A Successful Bid may not be assigned to any party without the consent of the Debtors.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors reserve the right to and may reject such Qualified Bid(s) (other than the Stalking Horse Bid) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale Transaction; or (iii) contrary to the best interests of the Debtors and its estate.

## **Post-Auction Process**

Within one (1) business day after the conclusion of the Auction, the Debtors shall file with the Court, and serve on the Objection Notice Parties (and each Counterparty to a proposed Assigned Contract in the Successful Bid, if known), and cause to be published on the Epiq Website, a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall: (i) identify the Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder; (ii) list all proposed Assigned Contracts in the Successful Bids and Back-Up Bids, if known; (iii) identify any known proposed assignee(s) of proposed Assigned Contracts (if different from the applicable Successful Bidder or Back-up Bidder); and (iv) set forth the deadline and procedures for filing objections based on the inadequacy of the Adequate Assurance Information (as defined herein) and other Sale Objections (as defined herein) in response to the Notice of Auction Results.

Within five (5) business days after the conclusion of the Auction, the Debtors shall direct the Escrow Agent to return the Good Faith Deposit of any bidder (including any Stalking Horse Bidder, as applicable), together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) business days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the Good Faith Deposit of each Back-Up Bidder, together with interest accrued thereon, if any. Upon the authorized return of any such Good Faith Deposit, the Bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

The Successful Bidder's Good Faith Deposit shall be applied against the Purchase Price of such bidder's Successful Bid upon the consummation of the Sale Transaction.

In the event that a Successful Bidder does not consummate the proposed Sale Transaction and a Back-Up Bidder has been previously identified, the Debtors shall be authorized to consummate the Back-Up Bid to the extent set forth in the Sale Order (as defined in the Motion).

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Objections and Hearing

Objections to the Sale Transaction (each, a "**Sale Objection**") shall:  (i) be in writing; (ii) state the name and address of the objecting party and, if applicable, the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, if such objection is limited in nature, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (v) be filed with the Court on or before **February 9, 2026 at 4:00 p.m**. **(prevailing Eastern Time)** (the "**Sale Objection Deadline**"); and (vi) shall be served on the Objection Notice Parties and the Successful Bidder; *provided, that,* the Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment and upon notice to the Successful Bidder(s).  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

An appropriate representative of each Successful Bidder shall appear at the Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and the Successful Bidder, including the sale of the Debtors' assets to the Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code.  Any objection filed after the Sale Objection Deadline will not be considered by the Court unless otherwise ordered by the Court.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including the Stalking Horse Bidder(s), if any) that participate in the bidding process shall be deemed to have:  (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to

the Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Notice Parties

The "**Debtor Notice Parties**" shall include the following, and each other representative advised by the Debtors in writing from time to time:  (i) Weil, Gotshal & Manges LLP (Attn.: Ronit J. Berkovich (Ronit.Berkovich@weil.com); David J. Cohen (DavidJ.Cohen@weil.com); and Daphne Papadatos (Daphne.Papadatos@weil.com)); (ii) Richards, Layton & Finger, PA (Attn.: Zachary Shapiro (Shapiro@rlf.com) and Clint M. Carlisle (Carlisle@rlf.com)); and (iii) Cassel Salpeter & Co., LLC (Attn.: James Cassel (jcassel@cs-ib.com) and Philip Cassel (pcassel@cs-ib.com)).

The "**Objection Notice Parties**" shall include the following: (i) the Debtor Notice Parties, (ii) the United States Trustee for the District of Delaware; and (iii) and any other party entitled to notice pursuant to Bankruptcy Rule 2002.

The "**Sale Notice Parties**" shall include the following: (i) the U.S. Trustee (Attn.: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (ii) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Internal Revenue Service; (iv)  the United States Attorney's Office for the District of Delaware; (v) counsel to the Prepetition Junior Term Loan Lender, Prepetition Priority Bridge Loan Lender, and the DIP Lender: (a) Kirkland & Ellis LLP (Attn.: John Luze (john.luze@kirkland.com) and Margaret Reiney (margaret.reiney@kirkland.com)), and (b) Young Conaway Stargatt & Taylor, LLP (Attn.: Michael Nestor (mnestor@ycst.com) and Ryan Bartley (rbartley@ycst.com)); (vi) all persons known or reasonably believed, after reasonable inquiry, to have asserted a lien, encumbrance or any other interest in the Debtors' assets; and (vii) any party that is entitled to receive notice pursuant to Bankruptcy Rule 2002.

## Fiduciary Out

Nothing in these Bidding Procedures shall require the Debtors to take any action, or to refrain from taking any action to the extent the Debtors determine that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or their fiduciary obligations under applicable law.  In the event the Debtors exercise their Fiduciary Out, the Debtors shall provide notice to the DIP Lender as soon as reasonably practicable thereafter.

## Reservation of Rights

The Debtors shall have the right, as they may reasonably determine to be in the best interests of their estates, to carry out the Bidding Procedures, including, without limitation, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which bids are the Successful Bid(s) and Back-Up Bid(s); (iv) reject any bid that is (a) inadequate or insufficient, (b) not a Qualified Bid or otherwise not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) adjourn or cancel the Auction and/or the Sale Hearing in open court without further notice or as provided in the Bidding Procedures; (vi) withdraw the

Motion at any time with or without prejudice and (vii) modify the Bidding Procedures, including the Sale Timeline, in a manner consistent with their fiduciary duties and applicable law, including: (a) waiving terms and conditions with respect to any Potential Bidder; (b) extending deadlines set forth in the Bidding Procedures; (c) announcing at the Auction modified or additional procedures for conducting the Auction; and (d) providing reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Company, to the extent not materially inconsistent with the Bidding Procedures Order.

## DIP Lender Consultation Rights

The DIP Lender shall <u>not</u> have any Consultation Rights or Information Rights (each as defined below) unless and until the DIP Lender notifies the Debtors in writing of its intent not to submit a Bid for any of the Debtors' assets, which notification, once made, shall be binding upon, and irrevocable as to, the DIP Lender. Following such notification, and notwithstanding anything to the contrary herein, the DIP Lender will be entitled to (1) copies of all Bids and Non-Binding Indications of Interest received by the Debtors no later than the next calendar day after such Bid or Non-Binding Indication of Interest is received, *provided*, *that*, the DIP Lender must treat such Bids or Non-Binding Indications of Interest as confidential information subject to the confidentiality provisions in the DIP Credit Agreement (the "**Information Rights**") and (2) regular and timely consultation with the Debtors in relation to the Debtors' right to: (i) withdraw the Motion at any time with or without prejudice; (ii) modify the Bidding Procedures in a manner consistent with their fiduciary duties and applicable law, including: (a) waiving terms and conditions with respect to any Potential Bidder; (b) extending any deadline set forth in the Bidding Procedures; and (c) announcing at the Auction modified or additional procedures for conducting the Auction; (iii) deem Bids as Qualified Bids; (iv) designate a Stalking Horse Bidder(s); (v) determine the Starting Bid; (vi) determine the Minimum Overbid Amount; and (vii) identify the Successful Bidder and Back-Up Bidder (collectively, the "**Consultation Rights**").

## **Exhibit 2**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re

GBI SERVICES, LLC, *et al.*,

Debtors. [1]

:  **Chapter 11**
:
:  **Case No. 25-12089 (CTG)**
:  **(Jointly Administered)**
:
:  Obj. Deadline:
:  Hearing Date:

---------------------------------------------------------- x

## NOTICE OF SALE, BIDDING
## PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On December 17, 2025, GBI Services, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**"), in the above-captioned chapter 11 cases, a motion (Docket No. [●]) (the "**Motion**") seeking entry of an order (the "**Bidding Procedures Order**")[2] (i)(a) approving the bidding procedures, substantially in the form attached thereto as <u>Exhibit 1</u> (the "**Bidding Procedures**"), in connection with the sale of substantially all of the Debtors' assets; [3] (b)

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669).  The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures Order, as applicable.

[3]     For the avoidance of doubt, the Debtors reserve all rights regarding the form of Sale Transaction and may pursue (i) a Sale Transaction pursuant to section 363 of the Bankruptcy Code or (ii) a Sale Transaction or other restructuring transaction pursuant to a chapter 11 plan.  If a Sale Transaction or other restructuring transaction is pursued pursuant to a chapter 11 plan, an additional notice and opportunity to respond will be provided as necessary to comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules.

authorizing the Debtors to designate one or more stalking horse bidders (each a "**Stalking Horse Bidder**," and such bidders' bids, the "**Stalking Horse Bids**"); (c) authorizing the Debtors to conduct an auction (the "**Auction**"), if necessary, and a hearing for approval of the proposed Sale Transaction (as defined herein) (the "**Sale Hearing**"); (d) approving the form and manner of (1) notice of the Auction, the sale of the Company (the "**Sale Transaction**"), and the Sale Hearing, substantially in the form annexed thereto as Exhibit 2 (the "**Sale Notice**") and (2) notice to each non-Debtor counterparty (each, a "**Counterparty**") to a proposed Assigned Contract of the Debtors setting forth the Debtors' calculation of the amount necessary to cure any monetary defaults under such contract or lease (the "**Cure Costs**"), substantially in the form attached thereto as Exhibit 3 (the "**Assignment and Cure Notice**"); (e) approving procedures for the assumption and assignment of proposed Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (ii)(a) authorizing the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following completion of the Sale Transaction, (b) authorizing assumption and assignment of executory contracts and unexpired leases, and (c) granting related relief, all as more fully set forth in the Motion.

2.      On [●], 2026, the Court entered the Bidding Procedures Order (Docket No. [●]).

### Authority to Designate Stalking Horse Bidders

3.      Pursuant to the Bidding Procedures and Bidding Procedures Order, the Debtors have the authority to designate one or more Stalking Horse Bidders, offer such Stalking Horse Bidders Stalking Horse Bid Protections, and to enter into purchase agreements with such Stalking Horse Bidders (each, a "**Stalking Horse Agreement**"), subject to further Court approval in accordance with the terms of the Bidding Procedures Order and the Bidding Procedures. Any

Stalking Horse Agreement would be subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures. A copy of the Stalking Horse Agreements, if any, will be made available on the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Epiq Corporate Restructuring, LLC, located at https://dm.epiq11.com/case/nck/info (the "**Epiq Website**") and on the Court's docket.

### **Important Dates and Deadlines**

- **Non-Binding Indication of Interest Deadline.** Any person or entity interested in participating in the Auction is encouraged to submit a Non-Binding Indication of Interest on or before <u>January 20, 2026 at 4:00 p.m. (prevailing Eastern Time)</u>.

- **Stalking Horse Objections.** Objections to the designation of a Stalking Horse Bidder, including the Stalking Horse Bid Protections, if any, shall be filed in accordance with the Bidding Procedures and filed with the Court no later than three (3) business days after the service of the Notice of Stalking Horse Bidder.

- **Bid Deadline.** Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before <u>February 2, 2026 at 4:00 p.m. (prevailing Eastern Time)</u> (the "Bid Deadline").

- **Auction.** An Auction, if necessary, has been scheduled for <u>February 4, 2026 at 10:00 a.m. (prevailing Eastern Time)</u> at (i) the offices of Weil, Gotshal & Manges LLP, located at either (x) 767 Fifth Avenue, New York, NY 10153 or (y) 1395 Brickell Avenue, Miami, Florida 33131 and/or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors and upon notice to all parties in interest.

- **Sale Objection Deadline.** Objections to the Sale Transaction, including any objection to the sale of the Debtors' assets free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code must be (i) filed in accordance with the Bidding Procedures and (ii) filed with the Court on or before <u>February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)</u> (the "<u>Sale Objection Deadline</u>").

- **Sale Hearing.** A hearing to approve the sale of the Company to a Successful Bidder shall be held before the Court before the Honorable Craig T. Goldblatt on <u>February 13, 2026 at [●] a.m./p.m. (prevailing Eastern Time</u> (the "<u>Sale Hearing</u>").

**Additional Information**

4.      Any party interested in submitting a bid should contact the Debtors' proposed investment banker, Cassel Salpeter & Co., LLC (Attn: James Cassel (jcassel@cs-ib.com) and Philip Cassel (pcassel@cs-ib.com)).

5.      Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and any Stalking Horse Agreement, if applicable, may be obtained free of charge at the Epiq Website.

**Notice to Holders of Consent Rights**

6.      The Debtors intend to assign to the Successful Bidder(s), pursuant to the applicable asset purchase agreement, certain contracts, agreements, leases and other assets, free and clear of all liens, claims, interests, and encumbrances (other than certain assumed liabilities, liens, or as otherwise provided in the applicable purchase agreement).  If any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "**Consent Right**"), then such party must file with the Court, an objection identifying:  (i) such contract(s), lease(s), or other agreement(s); (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s); and (iii) all supporting documentation (each, a "**Consent Right Objection**"), no later than **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

7.      If a party files a Consent Right Objection in a manner that is consistent with the requirements set forth above and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by the Court at the Sale Hearing or such later hearing as may be determined by the Debtors on notice to the objecting party.

8.      Any person failing to timely file a Consent Right Objection will be: (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights (other than certain assumed liabilities, liens, or as otherwise provided in the applicable purchase agreement) and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and encumbrances, including Consent Rights (other than assumed liabilities, liens or as otherwise provided in the applicable purchase agreement), regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.

9.      If any person files a Consent Right Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Consent Right Objection, as applicable (and serving such response on the objecting party) **on or before February 12, 2026 at 12:00 p.m. (prevailing Eastern Time)**.  Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

## Reservation of Rights

10.      The Debtors shall have the right, as they may reasonably determine to be in the best interests of their estates, to carry out the Bidding Procedures, including, without limitation, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified

Bids; (iii) determine which bids are the Successful Bid(s) and Back-Up Bid(s) (as such terms are defined in the Bidding Procedures); (iv) reject any bid that is (a) inadequate or insufficient, (b) not a Qualified Bid or otherwise not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; and (v) adjourn or cancel the Auction and/or the Sale Hearing in open court without further notice or as provided in the Bidding Procedures.

11.     The Debtors shall have the right, as they may reasonably determine to be in the best interest of their estates to (i) withdraw the Motion at any time with or without prejudice and (ii) modify the Bidding Procedures, in a manner consistent with their fiduciary duties and applicable law, including:  (a) waiving terms and conditions with respect to any Potential Bidder; (b) extending deadlines set forth in the Bidding Procedures; (c) announcing at the Auction modified or additional procedures for conducting the Auction; and (d) providing reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Company, to the extent not materially inconsistent with the Bidding Procedures Order

12.     **FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

13.     **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION,**

OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT(S), IF APPLICABLE, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND THE SUCCESSFUL BIDDER(S) AT THE AUCTION, UNLESS OTHERWISE ORDERED BY THE COURT.

Dated: [●], 2026
      Wilmington, Delaware

*/s/ DRAFT*

RICHARDS, LAYTON & FINGER, P.A.
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
James F. McCauley (No. 6991)
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Email: merchant@rlf.com
     shapiro@rlf.com
     mccauley@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Email: davidj.cohen@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Daphne S. Papadatos (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Emails: ronit.berkovich@weil.com
     daphne.papadatos@weil.com

*Proposed Attorneys for the Debtors*
*and the Debtors in Possession*

7

## **Exhibit 3**

**Assignment and Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
                                            :   Chapter 11
In re                                       :
                                            :   Case No. 25-12089 (CTG)
GBI SERVICES, LLC, et al.,                  :   (Jointly Administered)
                                            :
           Debtors. 1                       :    Obj. Deadline:
                                            :    Hearing Date:
--------------------------------------------------------- x
```

### NOTICE OF CURE COSTS AND POTENTIAL
### ASSUMPTION AND ASSIGNMENT OF EXECUTORY
### <u>CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.        On December 17, 2025, GBI Services, LLC, and certain of its affiliates, as

debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor

affiliates, the "**Company**") filed with the United States Bankruptcy Court for the District of

Delaware (the "**Court**"), in the above-captioned chapter 11 cases, a motion (Docket No. [●])

(the "**Motion**") seeking entry of an order (the "**Bidding Procedures Order**")[2] (i)(a) approving the

bidding procedures, substantially in the form attached thereto as <u>Exhibit 1</u> (the "**Bidding**

**Procedures**"), in connection with the sale of substantially all of the Debtors' assets; (b) authorizing

the Debtors to designate one or more stalking horse bidders (each a "**Stalking Horse Bidder,**" and

such bidders' bids, the "**Stalking Horse Bids**"); (c) authorizing the Debtors to conduct an auction

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669).  The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures Order, as applicable.

(the "**Auction**"), if necessary, and a hearing for approval of the proposed Sale Transaction (as defined herein) (the "**Sale Hearing**"); (d) approving the form and manner of (1) notice of the Auction, the sale of the Company (the "**Sale Transaction**"), and the Sale Hearing, substantially in the form annexed thereto as Exhibit 2 (the "**Sale Notice**") and (2) notice to each non-Debtor counterparty (each, a "**Counterparty**") to a proposed Assigned Contract of the Debtors setting forth the Debtors' calculation of the amount necessary to cure any monetary defaults under such contract or lease (the "**Cure Costs**"), substantially in the form attached thereto as Exhibit 3 (the "**Assignment and Cure Notice**"); (e) approving procedures for the assumption and assignment of proposed Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (ii)(a) authorizing the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following completion of the Sale Transaction, (b) authorizing assumption and assignment of executory contracts and unexpired leases, and (c) granting related relief, all as more fully set forth in the Motion.

2.      On [●], 2026, the Court entered the Bidding Procedures Order (Docket No. [●]).

3.      The initial list of "**Assigned Contracts**" that may be assumed and assigned in connection with the Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

4.      The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is,

in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

5.      Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease.

6.      If:  (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder, or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Assignment and Cure Notice; or (b) a Successful Bidder designates any additional contracts or leases not previously included on this Assignment and Cure Notice for assumption and assignment, the Debtors will file with the Court and serve on the applicable Counterparty a Supplemental Assignment and Cure Notice.

## **CURE AND ADEQUATE ASSURANCE OBJECTION**

7.      Any objection, including where such objection is based on a Consent Right (as defined in the Bidding Procedures Order), to (i) the proposed assumption, assignment, or potential designation of an Assigned Contract identified on **Exhibit A**, the subject of which objection is the Debtors' proposed Cure Costs (a "**Cure Objection**"), or (ii) the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") with respect to the assumption and assignment of any Assigned Contracts identified on **Exhibit A** to a Successful Bidder  must:

   (a)    be in writing;

   (b)    state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

   (c)    state with particularity the legal and factual bases thereof, including the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Assigned Contract;

   (d)    conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and

(e)     be filed with the Court (i) in the case of a Cure Objection, by **January 30, 2026 at 4:00 p.m. (prevailing Eastern Time)** and (ii) in the case of an Adequate Assurance Objection, by **February 9, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

8.     **IF NO TIMELY CURE OBJECTION OR ADEQUATE ASSURANCE OBJECTION IS FILED WITH RESPECT TO AN ASSIGNED CONTRACT OR A SUCCESSFUL BIDDER, (THE "CONTRACT OBJECTION"): (I) THE COUNTERPARTY TO SUCH PROPOSED ASSIGNED CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT TO THE SUCCESSFUL BIDDER, AS APPLICABLE, OF THE ASSIGNED CONTRACT, AND BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO SUCH ASSUMPTION AND ASSIGNMENT (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY THE SUCCESSFUL BIDDER OR BIDDERS); (II) ANY AND ALL DEFAULTS UNDER THE ASSIGNED CONTRACT AND ANY AND ALL PECUNIARY LOSSES RELATED THERETO SHALL BE DEEMED CURED AND COMPENSATED PURSUANT TO BANKRUPTCY CODE SECTION 365(B)(1)(A) AND UPON PAYMENT OF THE CURE COSTS SET FORTH IN THE ASSIGNMENT AND CURE NOTICE FOR SUCH ASSIGNED CONTRACT; (III) THE DEBTORS WILL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE FOR SUCH ASSIGNED CONTRACT IN ACCORDANCE WITH SECTION 365(F)(2)(B) OF THE BANKRUPTCY CODE AND THE COUNTERPARTY SHALL FOREVER BE BARRED FROM ASSERTING AGAINST THE DEBTORS, THEIR ESTATES, AND A SUCCESSFUL BIDDER, ANY ADDITIONAL OBLIGATION TO PROVIDE ADEQUATE ASSURANCE OF FUTURE**

**PERFORMANCE; AND (IV) THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OTHER CLAIMS RELATED TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS AND THEIR ESTATES OR THE SUCCESSFUL BIDDER, OR ITS PROPERTY, THAT EXISTED PRIOR TO THE ENTRY OF THE ORDER RESOLVING SUCH CONTRACT OBJECTION AND ANY SALE ORDER.**

### Sale Hearing

9.      The Debtors will seek to assume and assign the Assigned Contracts at the Sale Hearing.  The Sale Hearing shall be held on **February 13, 2026, at [●] a.m./p.m. (prevailing Eastern Time)** before the Honorable Craig T. Goldblatt at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801, or such other date and time to be noticed by the Debtors.

10.      Objections, if any, that cannot otherwise be resolved by the parties, will be heard at the Sale Hearing or such later hearing, as determined by the Debtors upon notice to the Counterparty.

### Additional Information

11.      Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Agreement(s), if any, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC, located at https://dm.epiq11.com/case/nck/info.

Dated: [●], 2026
    Wilmington, Delaware

*/s/ DRAFT*

RICHARDS, LAYTON & FINGER, P.A.
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
James F. McCauley (No. 6991)
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Email: merchant@rlf.com
      shapiro@rlf.com
      mccauley@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Email: davidj.cohen@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Daphne S. Papadatos (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Emails: ronit.berkovich@weil.com
      daphne.papadatos@weil.com

*Proposed Attorneys for the Debtors*
*and the Debtors in Possession*

## **Exhibit A**

**Assigned Contracts and Proposed Cure Costs**